**HAMPTON INDUSTRIES, INCORPORATED, Plaintiff–Appellant,**

v.

**Mary SPARROW; Whitley, Coley & Wooten, P.A., Defendants–Appellees.**

No. 92–1494.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1992.

Decided Dec. 21, 1992.

---

John Charles Archie, White & Allen, Kinston, NC, for plaintiff-appellant.

William Crawford Coley, III, Whitley, Coley & Wooten, Kinston, NC, for defendants-appellees.

Before RUSSELL, WILKINSON, and LUTTIG, Circuit Judges.

## OPINION

DONALD RUSSELL, Circuit Judge:

Hampton Industries (Hampton), appeals from the district court's determination that the allocation of personal injury settlement funds, pursuant to an enforceable subrogation clause in an employee benefit plan, was controlled by section 44–50 of the North Carolina General Statutes. Because we find that the Employee Retirement Income Security Act (ERISA) preempts the North Carolina statute, we reverse.

### I.

On October 18, 1988, Mary Sparrow was injured in an automobile accident. Mrs. Sparrow incurred medical expenses of $29,856.14 as a result of her accident. At the time of the accident, Jerry Sparrow, Mary's husband, was employed by Hampton and was covered by its health benefits plan (the Plan). The Plan was self-funded with certain stop-loss elements,[1] and Blue Cross/Blue Shield of North Carolina (BCBS) administered benefits claims under an agreement with Hampton. The Sparrows submitted the bill for $29,856.14 to BCBS via Hampton. BCBS paid a total of $20,278.53 for Mrs. Sparrow's medical expenses.

After treatment for her injuries, Mrs. Sparrow retained the law firm of Whitley, Coley & Wooten (WCW) to represent her with respect to any claim arising out of her car accident. She eventually settled her claim against the driver of the other automobile for $25,000. WCW is presently holding this money in trust.

In late 1989, BCBS began correspondence with WCW regarding Hampton's right of subrogation. Under the Administrative Services Agreement between BCBS and Hampton governing the Plan, Hampton retained a right of subrogation for situations where the employee or dependent was injured by a third party.[2] The subro-

1. A self-funded plan is one in which the company pays all benefits claims itself. In this case, the Plan was self-funded up to $60,000 of coverage per employee or dependent in 1988, and up to $75,000 in 1989 and 1990. Under Hampton's contract with BCBS, the stop-loss elements required that BCBS pay for any benefits claimed over the self-funded amount.

2. The original subrogation clause provided that [i]f a Member is injured under circumstances which impose on someone else a legal obligation to pay the expenses of that Member's treatment, as damages, the Corporation will pay for covered services, but the Corporation reserves the right to be reimbursed from the payment made by the third party. Thus, the subro-

gation clause was explained to all Hampton employees in Hampton's health benefits booklet.[3] Despite several letters notifying WCW and Mrs. Sparrow of Hampton's rights under the Plan, Mrs. Sparrow failed to sign and return a subrogation agreement submitted by BCBS on February 1, 1991, as required by the Plan. BCBS had disbursed benefits for Mrs. Sparrow through September of 1990.

On February 22, 1991, Hampton filed this action against Mrs. Sparrow and WCW seeking reimbursement out of the settlement proceeds of the funds expended for Mrs. Sparrow's medical care. Hampton argued that it was entitled to prevail pursuant to the subrogation clause in the Administrative Services Agreement between Hampton and BCBS.

On Hampton's motion for summary judgment, the district court found that the Plan was an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1), and therefore subject to ERISA. The district court also found that the Plan was self-funded

with certain stop-loss elements. In granting summary judgment for Hampton, the district court held that Mrs. Sparrow was bound to the terms of the Plan, specifically the subrogation clause, regardless of her failure to sign the subrogation agreement. The district court concluded, however, that apportionment of the settlement proceeds was governed by section 44-50 of the North Carolina General Statutes, which limits a medical provider's recovery of settlement funds to fifty percent of the amount of damages recovered, exclusive of attorneys' fees.[4] The only issue on appeal is whether ERISA preempts the North Carolina apportionment statute.

## II.

An analysis of 29 U.S.C. § 1144 and the Supreme Court's decision in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), leads us to conclude that ERISA preempts section 44-50 as applied in this case. Section 1144(a) is ERISA's preemption clause; it provides

---

Corporation shall be subrogated and succeed to the Member's right of recovery against any person or organization. . . .

3. The health benefits booklet explained the subrogation agreement as follows:

Sometimes participants require hospital and medical services because they have been injured in accidents caused by the negligence of another person. In these instances, the person causing the accident is responsible for payment of the hospital and medical expenses. The insurance company that initially pays for the hospital and medical services has the right to recover these payments for participants injured due to the negligence of another person. This is known as subrogation. The Plan will initially pay for covered hospital and medical services of an injured participant. However, if another person has a legal obligation to pay for the participant's expenses as damages, the Plan has the right to be reimbursed by the person causing the accident.

In November of 1989, Hampton amended the booklet. The new clause retained the first paragraph in the original but replaced the second with the following paragraphs:

If you hire an attorney to pursue recovery of damages from the person causing the injury, you and your attorney will be notified by BCBSNC of the Group's right of subrogation. You will be asked to sign a Reimbursement Agreement. This form states that if your cov-

erage has paid for your expenses and you also received compensation from the negligent person or the negligent person's insurer, you will reimburse BCBSNC on behalf of the Group for benefit payments related to the injury. BCBSNC will make no further payments for services related to the injury until this Reimbursement Agreement is signed.

4. North Carolina Gen.Stat. § 44-50 provides that

[s]uch a lien as provided for in G.S. 44-49 shall also attach upon all funds paid to any person in compensation for or settlement of the said injuries, whether in litigation or otherwise; and it shall be the duty of any person receiving the same before disbursement thereof to retain out of any recovery or any compensation so received a sufficient amount to pay the just and bona fide claims for such drugs, medical supplies, ambulance service and medical attention and/or hospital service, after having received and accepted notice thereof: Provided, that evidence as to the amount of such charges shall be competent in the trial of any such action: Provided, further, that nothing herein contained shall be construed as to interfere with any amount due for attorney's services: Provided, further, that the lien hereinbefore provided for shall in no case, exclusive of attorneys' fees, exceed fifty percent (50%) of the amount of damages recovered.

that any state law relating to an employee benefit plan is preempted by ERISA.[5] Section 1144(b)(2)(A) is the "saving" clause; it provides that the states continue to have the power to regulate insurance, subject to subparagraph (B).[6] Section 1144(b)(2)(B) is the "deemer" clause; it provides that "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate" insurance. 29 U.S.C. § 1144(b)(2)(B). We must apply all three clauses in determining whether ERISA preempts a state law. *Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 651 (4th Cir.1991).

The Supreme Court has observed that ERISA's preemption clause "is conspicuous for its breadth," *FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 407; *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985) (*cited in Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 651 (4th Cir.1991)), and has held that a state law "relate[s] to" an employee benefit plan under 1144(a) if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The Court reasoned in reaching that holding that Congress "did not mean to preempt only state laws specifically designed to affect employee benefit plans." *FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 408. In enforcing ERISA, the Supreme Court has "not hesitated to apply ERISA's preemption clause to state laws that risk subjecting plan administrators to conflicting state regulations." *Id.*

In the case at hand, the North Carolina statute "relate[s] to" an employee benefits plan within the meaning of the preemption clause as set forth in *Shaw*, 463 U.S. at 96–

97, 103 S.Ct. at 2898–900. In *FMC Corp.*, the Court found that a Pennsylvania statute forbidding "subrogation or reimbursement from a claimant's tort recovery with respect to ... benefits ... paid" under "[a]ny program, group contract or other arrangement for payment of benefits" was "connected to" an employee benefit plan within the meaning of ERISA's preemption clause because it posed the risk of subjecting plan administrators to conflicting state regulations. *FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 408. North Carolina's apportionment statute has a similar connection to an employee benefit plan, in that it limits a medical services provider's recovery to 50 percent of the settlement recovery, *see* N.C.Gen.Stat. § 44–50, thereby possibly exposing plan administrators to different risks in different states, contrary to ERISA's underlying policy goals. Therefore, we conclude that, in this case, ERISA preempts section 44–50.

Although we conclude that ERISA's preemption provision operates in this case, we must still decide whether section 44–50 falls within the scope of the saving clause in 29 U.S.C. § 1144(b)(2)(A). The saving clause provides that the states continue to have the power to regulate insurance, subject to 29 U.S.C. § 1144(b)(2)(B).

In *FMC Corp.*, the Court found that the Pennsylvania statute fell within the scope of the saving clause because it directly controlled insurance contracts by invalidating all subrogation provisions they might contain. *FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 409. The Court concluded that the statute did "not merely have an impact on the insurance industry; it is aimed at it." *Id.* Section 44–50 also appears to regulate insurance in the sense contemplated by the Court in *FMC Corp.* in that it limits the recovery of settlement proceeds by medical providers to fifty percent of the amount of damages recovered. Such limits on subro-

---

5. The preemption clause provides that
    [e]xcept as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
    29 U.S.C. § 1144(a).

6. The saving clause provides that
    [e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance....
    29 U.S.C. § 1144(b)(2)(A).

**730**

gation recoveries appear to be aimed at the insurance industry, and therefore would also appear to come within the scope of the saving clause.

Regardless of whether section 44–50 satisfies the saving clause, however, the district court's decision should be reversed. If the saving clause does not apply, the preemption clause controls and ERISA preempts section 44–50; if the saving clause does apply, the Plan is exempted from the North Carolina statute by operation of the deemer clause.[7]

The deemer clause forbids states from deeming any employee benefit plan "to be an insurance company or other insurer ... or to be engaged in the business of insurance." 29 U.S.C. § 1144(b)(2)(B). In *FMC Corp.*, the Supreme Court held that the deemer clause "exempt[s] self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause." *FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 409; *accord Talquin Bldg. Prods.*, 928 F.2d at 652 (stating that "so long as the Plan can be characterized as self-funded, state law cannot regulate it"). In this case the district court found that the Plan was self-funded with stop-loss elements.[8] That finding was not clearly erroneous. Accordingly, we find that the deemer clause operates to exempt the Plan from state law coverage.

### III.

Because we find that ERISA preempts the North Carolina apportionment statute, the decision of the district court distributing the proceeds of the settlement funds according to section 44–50 of the North Carolina General Statutes is hereby reversed and the case is remanded for further proceedings to determine the allocation of the settlement proceeds.[9]

REVERSED AND REMANDED.

---

7. The Supreme Court explained the analysis in these terms:

> State laws directed toward the plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state regulation.

*FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 409.

8. The Fourth Circuit has held that the presence of stop-loss elements in an employee benefits plan does not destroy the plan's self-funded status for preemption purposes. *Thompson*, 928 F.2d at 653.

9. Hampton argues in its brief that if we find that ERISA preempts N.C.Gen.Stat. § 44–50, we should order the district court to compel payment of the balance of the settlement fund to Hampton, less the attorneys' fees due WCW, to the extent of $20,278.53. Mrs. Sparrow does not address this issue in her brief. Therefore, it appears that on remand any relief granted to Hampton on remand should be limited to Hampton's request.