Jeffrey Charles McINNIS, Administrator of the estate of Lori Smith McInnis, Plaintiff–Appellant,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY; Fruit of the Loom, Inc.; Martin Mills, Incorporated, Defendants–Appellees,

and

Farley Industries; Richmond Apparel, Defendants.

No. 93–2003.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1994.

Decided April 12, 1994.

ARGUED: Donald Thomas Bogan, Stern, Graham & Klepfer, Greensboro, NC, for appellant. David Blaine Sanders, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for appellees. ON BRIEF: David M. Schilli, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for appellees.

Before NIEMEYER, Circuit Judge, BUTZNER, Senior Circuit Judge, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Senior Judge BUTZNER and Judge ELLIS joined.

## OPINION

NIEMEYER, Circuit Judge:

The employee benefit plan sponsored by Fruit of the Loom, Inc., provides medical

benefits to employees for injuries caused by third parties, provided that any employee making a claim agrees to reimburse the plan if the employee recovers payment from the third party. North Carolina's wrongful death statute, N.C.Gen.Stat. § 28A–18–2, however, places a limit on such reimbursement from the estate of a deceased. The question presented here is whether the employee benefit plan must pay medical benefits to the estate of a deceased plan participant and be denied reimbursement under the North Carolina statute or, in the alternative, whether the North Carolina statute is preempted by ERISA. For the reasons that follow, we hold that in the circumstances of this case ERISA preempts the operation of the North Carolina statute.

## I

On February 26, 1990, in Moore County, North Carolina, an automobile driven by Jeffrey C. McInnis was struck head-on by an automobile operated by Leon Hinson, who was intoxicated at the time. Jeffrey McInnis' wife, Lori McInnis, who was riding in the passenger's seat, was seriously injured and hospitalized. Two weeks later, she died from her injuries. She was survived by her husband, who was appointed the administrator of her estate, and by a three-year-old child.

The insurance company covering Hinson offered to settle any claims against Hinson for the policy limit of $25,000, and the insurance company covering the McInnis vehicle offered to settle a claim under that company's underinsurance coverage for $175,000. On the petition of Jeffrey McInnis as the administrator, the Superior Court in Richmond County, North Carolina, approved the settlement, as required by the North Carolina's wrongful death statute, N.C.Gen.Stat. § 28A–13–3(a)(23), finding the settlement total of $200,000 to be "in the best interest of the Estate* of Lori Smith McInnis, and *the beneficiaries* of said Estate, to wit: Jeffrey Charles McInnis and the minor, Joshua H. McInnis." (Emphasis added).

Following the settlement, Jeffrey McInnis submitted a claim in the amount of $58,121 to the welfare benefit plan provided by Lori McInnis' employer, Martin Mills, Inc., a subsidiary of Fruit of the Loom, Inc., for reimbursement of hospital expenses incurred by Lori McInnis before her death. The welfare benefit plan, which provided group life insurance and medical benefits for employees of Fruit of the Loom and its subsidiaries, was sponsored by Fruit of the Loom and issued by Provident Life and Accident Insurance Company ("Provident Life"). Lori McInnis concededly was covered by the plan as an employee of a subsidiary. Fruit of the Loom indicated that it would advance the medical benefits to Jeffrey McInnis, but only if he executed an "Acts of the Third Party" agreement as specified in the plan.[1] Fruit of the Loom explained its position further in a letter to McInnis:

> Fruit of the Loom Group Medical Plan does not provide coverage for injuries caused by a third party. Benefits, however, may be advanced only if the injured party executes an "Acts of Third Party" Agreement. This agreement states that the injured party will reimburse the plan for the funds advanced upon recovery of a judgment or settlement from the third party.

McInnis refused to execute the agreement because, he claimed, such an agreement would force the estate to pay out medical expenses beyond an amount permitted by the state's wrongful death statute. The applicable state act provided, in pertinent part:

> The amount recovered in such action [by reason of the death of a person] is not

1. The plan provides in relevant part:
*Acts of Third Parties*
A special provision applies when you or a Dependent covered under the Plan is injured through the act or omission of another person. When this happens, the Provident will advance the benefits under the Plan only on condition that you or a Dependent agrees in writing:
–To repay the Provident in full any sums advanced to cover such expenses from the judgment or settlement you or a Dependant receive; and
–To provide the Provident with a lien to repay the Provident to the extent of medical benefits advanced by the Provident. The lien may be filed with the person whose act caused the injuries, his agent, the court or attorney of the person covered under the plan.

**588**

liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, *and reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1,500) incident to the injury resulting in death.*

N.C.Gen.Stat. § 28A–18–2(a) (emphasis added).[2] Because McInnis refused to execute the "Acts of Third Parties" agreement, Fruit of the Loom refused to advance medical payments under the terms of the plan.

McInnis filed suit against Provident Life, Fruit of the Loom, and its subsidiary, Martin Mills. On the defendants' motion for summary judgment, the district court entered judgment for the defendants, concluding that the "Acts of Third Parties" clause in Lori McInnis' plan was enforceable because the plan was covered by ERISA and because ERISA preempted any conflicting state provision. This appeal followed.

## II.

McInnis contends that, as administrator and successor in interest to Lori McInnis' rights under the plan, he is entitled to medical benefits for Lori McInnis' hospital expenses in the amount of $58,121. While he recognizes that the terms of the plan also require him to repay those benefits to the plan if he recovered for Lori McInnis' injuries from third parties, he contends that the North Carolina statute prohibits him from expending more than $1,500 in estate assets for such repayment. He thus claims that under state law, he cannot sign the payback agreement required by the plan.

Fruit of the Loom argues that to the extent the North Carolina statute alters the terms of a plan covered by ERISA, it is preempted by ERISA. It argues, in addition, that under principles of contract law, since McInnis failed to satisfy the plan's condition precedent to payment of medical benefits by not executing the payback agreement, McInnis is not entitled to benefits. Fruit of the Loom asserts that advancing benefits without a payback obligation would alter the terms of the plan in favor of McInnis and to

the possible detriment of others not implicated by the North Carolina statute.

McInnis argues that the resolution of the issue is governed by our decision in *Liberty Corp. v. NCNB*, 984 F.2d 1383 (4th Cir.1993), where we held that, in the circumstances presented there, ERISA did not preempt the North Carolina wrongful death statute's limitation on recovery of medical expenses. N.C.Gen.Stat. § 28A–18–2. Although Fruit of the Loom seeks to distinguish *Liberty* on the basis that the plan there did not impose a condition precedent to the payment of benefits, the critical issue is whether ERISA preempts application of the North Carolina statute under the circumstances of this case.

The broad scope of ERISA's preemption has been frequently articulated. The Act provides:

Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan.*

29 U.S.C. § 1144(a) (emphasis added). The first step in the preemption analysis is to determine whether the purported claim "relates" to an employee benefit plan. *See Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 418 (4th Cir.1993). The phrase "relates to" is given a broad, common sense meaning—"[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The breadth of preemption, however, is not unlimited. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21.

We applied these principles in *Liberty* to somewhat different circumstances. The court there found that the claim under North Carolina's wrongful death statute belonged not to the plan participant or to his estate, but rather to his beneficiaries. *Liberty*, 984 F.2d at 1388. While disposition of assets

2. The statute was amended in 1993 to increase the dollar limit from $1,500 to $4,500.

belonging to the beneficiaries of a plan participant may "relate" to a plan, we concluded that its relation to the plan was too "tenuous, remote, or peripheral," and thus the beneficiaries' claims would not be governed by ERISA. *Id.* at 1388. We were careful to note, however, that if the damages were recovered "by or on behalf of the same person [plan participant] whose medical expenses it had paid ... [then] the conflict between the state law and the ERISA plan must be resolved in favor of the plan and therefore in favor of preemption." *Id.* at 1389. Thus, the answer to the question of whether a claim under North Carolina's wrongful death statute belongs to the deceased plan participant or to a beneficiary of the decedent defines the line between remoteness and relatedness under our *Liberty* decision. Our inquiry in this case, then, is directed to the question of whose damage claim is at issue. In order to proceed, we first need to examine more closely North Carolina's wrongful death statute.

At common law, the death of an injured person extinguished his right of action against a tortfeasor causing the injury. *See Hoke v. Atlantic Greyhound Corp.,* 38 S.E.2d 105, 107 (1946). Consequently, the decedent's damages claims for injuries causing death could not be asserted by the estate of the decedent. Widely enacted survival statutes in the various states have altered that status by providing that damage claims of decedents survive death and may be maintained by representatives of the decedents' estates. *See Wrongful Death Damages in North Carolina,* 44 N.C.L.Rev. 402, 404 (1966) (reporting that several states, including North Carolina, have enacted survival statutes). Conceptually, the nature and amount of such a claim is the same as that which the decedent would have had if he had not died. Damages thus might include the decedent's lost earnings, medical expenses (if the decedent was responsible for them), and compensation for pain and suffering. *See generally Restatement (Second) of Torts* § 926 cmt. a (1977).

■ Also at common law, those close to a decedent had no right of action for damages caused *to them* by the wrongful death of the

decedent. This situation was changed initially in England by the enactment of "Lord Campbell's Act" in 1846, which first created a statutory right of action for wrongful death, and later in the United States by similar "wrongful death" acts enacted in all fifty states. *See Wrongful Death Damages,* 44 N.C.L.Rev. at 402–403. The wrongful death acts gave causes of action against tortfeasors to close relatives of the decedent who suffered loss from the wrongful death. The distinction between survival statutes and wrongful death statutes turns on the difference between those claims based on damages *preceding death* which were inflicted on and belonged to the decedent, and those claims based on damages *caused by* the decedent's death which belonged to family members. In both situations, however, the claims were dependant upon the decedent's having a cause of action against the tortfeasor if the decedent had survived. *See generally Restatement (Second) of Torts* § 925 cmt. a (1977).

Several states, including North Carolina, have combined survival and wrongful death statutes, presumably to avoid the duplication and expense of having two suits or claims by reason of a person's death. *See Restatements (Second) of Torts* § 925 cmt. b.3 (1977). Thus, North Carolina has a statute which preserves a decedent's tort claims to her estate, N.C. Gen.Stat. § 28A–18–1, and a separate provision which combines those survival claims with wrongful death claims of beneficiaries, *see* N.C.Gen.Stat. 28A–18–2. Section 28A–18–2 thus provides damages both for "pain and suffering of the decedent" (a survival statute type of damage) and for loss of "society, companionship, comfort, guidance, kindly offices and advice" (a type of damage caused *to others* by reason of wrongful death).

When we found in *Liberty* that a damage claim under N.C.Gen.Stat. § 28A–18–2 belonged *to the beneficiaries* of the deceased plan participant (damages typical of a wrongful death claim), we concluded that it was too remote to be "related to" the plan and be preempted by ERISA. But we recognized that had the damage claim belonged *to the decedent or to her estate* (damages typical of

a survival statute), then the state law claim could relate to a plan within the scope of ERISA's preemptive provision. This is consistent with our other decisions. *See, e.g., Hampton Indus., Inc. v. Sparrow*, 981 F.2d 726 (4th Cir.1992) (holding that North Carolina anti-subrogation statute was preempted by ERISA because it interfered with the plan's subrogative rights); *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.) (holding the same with respect to a Virginia anti-subrogation statute), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990).

■ In the case before us, the damages recovered as settlement clearly included those belonging to Lori McInnis and her estate, and this is confirmed in the order of the state court approving the estate's $200,000 settlement. The facts of this case are thus distinguishable from those in *Liberty*, where damages were found to belong only to the beneficiaries.

Accordingly, we conclude that under these facts, ERISA preempts the operation of North Carolina's wrongful death statute, N.C.Gen.Stat. § 28A-18-2, to the extent that the state law precludes operation of the terms of the "Acts of Third Parties" clause in the plan. We will thus give the plan's terms and conditions full effect, because to do otherwise would undermine not only the agreement between the parties but the expectations of all other plan participants who have an interest in the plan's funds and benefits. The plan in this case did not undertake to be responsible ultimately for medical expenses caused by third parties, but only to advance those expenses with the expectation of reimbursement. A state statute that would alter these benefits would impermissibly interfere in an area preempted by ERISA.

For these reasons, we affirm the judgment of the district court.

*AFFIRMED.*