**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SABRIYANA M. SINGH,
            *Plaintiff-Appellant,*

v.

PRUDENTIAL HEALTH CARE PLAN,
INCORPORATED, t/a Prudential
Insurance Companies of America,
t/a Prudential Health Care Plan of
the Mid-Atlantic,
            *Defendant-Appellee.*

No. 01-1102

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Williams, Jr., District Judge.
(CA-00-2168-AW)

Argued: February 24, 2003

Decided: July 3, 2003

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Michael and Judge King joined.

---

## COUNSEL

**ARGUED:** Frank Paul Bland, Jr., TRIAL LAWYERS FOR PUBLIC JUSTICE, Washington, D.C., for Appellant. Daly D.E. Temchine,

EPSTEIN, BECKER & GREEN, P.C., Washington, D.C., for Appellee. **ON BRIEF:** Kathy C. Potter, EPSTEIN, BECKER & GREEN, P.C., Washington, D.C., for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Sabriyana Singh commenced this action in State court against Prudential Health Care Plan, Inc., a health maintenance organization, seeking primarily reimbursement of monies paid to Prudential pursuant to a subrogation term in its policy that was issued as an employee benefit plan. Singh's complaint alleged that the subrogation term was illegal under the provisions of the Maryland Health Maintenance Organization Act (the "HMO Act"), Md. Code Ann., Health-Gen. II § 19-701 *et seq.*, that have been construed by the Maryland Court of Appeals in *Riemer v. Columbia Medical Plan, Inc.*, 747 A.2d 677 (Md. 2000), to prohibit HMOs from pursuing subrogation with respect to their members' claims against third parties. Prudential removed the case to federal court, asserting that Singh's claims based on State law were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and then moved to dismiss Singh's complaint. Singh filed a motion to remand the case to State court. The district court denied Singh's motion to remand and granted Prudential's motion to dismiss the complaint.

Because we agree with the district court that ERISA completely preempts Singh's state-law claims, we affirm the district court's denial of Singh's motion to remand. We reverse, however, its order dismissing Singh's claims, holding that they must be taken as ERISA claims and resolved under § 502(a) of ERISA.

I

After Sabriyana Singh was involved in an automobile accident in March 1998, Prudential Health Care Plan, Inc. ("Prudential"), an HMO with whom Singh's employer contracted to provide healthcare

benefits under an employee benefit plan, paid Singh $950.12 in respect to injuries sustained in the accident. Singh also made a claim against the other party to the accident, and in settlement of that claim, Allstate Insurance Company paid Singh $5,000 in February 1999. Based on a term of the employee benefit plan permitting Prudential, through subrogation, to assert members' claims against third parties for reimbursement of benefits paid, Prudential asserted a subrogation claim against the $5,000 for reimbursement of the $950.12 payment that it had earlier made to Singh, and in September 1999 Singh paid the subrogation claim.

Contending that the Prudential plan's subrogation provision was illegal under the Maryland HMO Act, Singh commenced this action in State court as a class action, alleging under State common law that Prudential was unjustly enriched and that it negligently misrepresented its right to subrogation. For relief, she sought (1) a declaratory judgment that the subrogation provision in the Prudential plan was illegal under the Maryland HMO Act, (2) an equitable award of restitution for subrogation amounts already paid by HMO members, (3) compensatory damages, and (4) an injunction directing Prudential to "cease and desist from asserting a subrogation interest in and a lien against any third-party recoveries" and prohibiting it from "increasing premiums, co-payments, or other charges to recover the losses incurred in connection with this litigation."

The Maryland HMO Act, on which Singh relied in her complaint, regulates any person or organization that provides its members with healthcare services on a "prepaid basis." *See* Md. Code Ann., Health-Gen. II § 19-701(f). Based on an HMO's provision of healthcare on a *prepaid* basis, the Maryland Court of Appeals construed the HMO Act to prohibit HMOs from "pursu[ing] its members for restitution, reimbursement, or subrogation after the members have received damages from a third-party tortfeasor." *Riemer v. Columbia Medical Plan, Inc.*, 747 A.2d 677, 697 (Md. 2000). Accordingly, if Maryland law were to apply, the provision of the Prudential plan that authorizes Prudential to pursue a subrogation claim with respect to benefits it provided under the plan would be illegal.

In response to the holding of *Riemer*, the Maryland legislature enacted, and on May 18, 2000, the governor signed, Senate Bill 903

to provide that an HMO is authorized to pursue subrogation with respect to members' recoveries from third parties. That legislation was made effective June 1, 2000, and provided that it would apply retroactively to all subrogation recoveries by HMOs since January 1, 1976. After the proceedings in this case were completed before the district court, the Maryland Court of Appeals held that the provision of Senate Bill 903 authorizing retroactive subrogation by HMOs violated the Maryland Constitution. *Harvey v. Kaiser Foundation Health Plan*, 805 A.2d 1061 (Md. 2002). Consequently, as Maryland law now stands, the subrogation prohibition of the HMO Act remained applicable until June 1, 2000.

In response to Singh's complaint, Prudential filed a notice of removal to federal court, pursuant to 28 U.S.C. §§ 1331 and 1441, asserting that the employee benefit plan in this case was regulated by ERISA and not by State law.

Singh filed a motion to remand to State court, arguing that her complaint arose under State law regulating insurance that was saved from preemption under ERISA's "saving clause," § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), and that her claims did not seek impermissible alternative remedies to ERISA's enforcement provisions, § 502(a), 29 U.S.C. § 1132(a). Prudential filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Singh's complaint failed to state a claim under ERISA upon which relief could be granted. Following a hearing on the motions, the district court issued an oral ruling denying Singh's motion to remand because her claims required interpretation of the terms of an ERISA plan and were completely preempted under § 502(a) of ERISA. The district court apparently rejected Singh's argument that the State law on which her claims were based was "saved" from preemption under § 514(b)(2)(A). Because of this, the court dismissed Singh's claims, presumably because state-law claims relating to an ERISA plan that are not saved from preemption under § 514(b)(2)(A) must be dismissed. As an additional basis for its dismissal, the court noted that Senate Bill 903 was "clear on its face" in allowing retroactive subrogation by HMOs, and that plaintiff would, therefore, be unable to get any relief in any court. The court did not, of course, have the benefit of the Maryland Court of Appeals' *Harvey* decision holding the retroactivity provision of Senate Bill 903 unconstitutional. In view of the

district court's apparent ruling that the HMO Act was not saved under § 514(b)(2)(A), the role of its commentary on the preempted State law, including Senate Bill 903, was not made clear.

From the district court's order denying remand and dismissing the complaint, Singh appealed.

II

Singh contends that her State common-law claims seek only to enforce the antisubrogation provision of the Maryland HMO Act, which she argues is a State regulation of insurance that is "saved" from ERISA's preemption under the express terms of § 514(b)(2)(A). She argues, "ERISA has no application to this state law dispute, and thus dismissal and removal were improper and the case should be remanded immediately to the state court."

Prudential contends that Singh's complaint seeks state-law remedies for claims based on the HMO Act that are preempted and subject to the exclusive remedial provisions of § 502(a) of ERISA, and therefore her claims must, under the doctrine of "complete preemption," be treated as federal claims. Therefore, according to Prudential, the action was properly removed. Prudential then argues, in the alternative and perhaps inconsistently, that Singh's claims cannot arise under the Maryland HMO Act because that Act does not create a private right of action. It asserts further that any common-law causes of action to enforce the subrogation prohibition of the HMO Act are preempted by § 514 of ERISA and thus should be dismissed.

In this appeal, we review the district court's order (1) denying Singh's motion to remand and (2) granting Prudential's motion to dismiss. To decide the remand issue, which actually involves Singh's challenge to removal jurisdiction, requires a determination of whether Singh's State common-law claims fall within the scope of ERISA's exclusive remedial scheme set forth in § 502(a), 29 U.S.C. § 1132(a), and therefore are completely preempted. As we explain herein, Singh's claims fall within the scope of § 502(a) if they are claims for benefits, entitlement to which must be determined by passing on the validity, interpretation or applicability of a term of an ERISA plan. Removal jurisdiction is only proper, then, if Singh's State common-

law claims for unjust enrichment and negligent misrepresentation are, in fact, claims for benefits due under the terms of an ERISA plan. In this particular case, Singh's claims cannot be thought of as seeking enforcement of the terms of an ERISA plan unless a State law, the Maryland HMO Act, acts to define a term of the plan. Thus, our jurisdictional analysis must answer preliminarily what the terms of the plan are and only then may we proceed to determine whether Singh's claims are, in fact, claims for benefits due under the terms of the plan. In determining the HMO Act's impact on the plan at issue here, we take the course of analysis set forth in *Rush Prudential HMO v. Moran*, 536 U.S. 355 (2002), a case in which the claimant, like Singh here, sought reimbursement from an HMO, relying in part on a State HMO Act's impact on the plan. *See id.* (discussing the impact of a State HMO Act that was "saved" under ERISA § 514(b)(2)(A) on the terms of an ERISA plan and on the exclusive remedial scheme set forth in § 502(a)).

In Parts III and IV, therefore, we conduct the *Rush* analysis to determine whether the Maryland HMO Act's subrogation prohibition — on which Singh's State common-law claims depend — defines a term of the relevant plan through § 514(a) and (b)(2)(A) of ERISA. This requires us to determine whether the HMO Act itself is preempted by ERISA under the relevant statutory provisions and whether the HMO Act conflicts with ERISA's remedial scheme. Concluding that the HMO Act is "saved" from preemption as a State regulation of insurance and therefore is applied to negate the plan's subrogation term, we assess, in Part V, whether Singh's claims for the return of funds under State common law are claims for entitlement to benefits under the *terms* of the plan as modified by the saved State law, such that the claim is "completely preempted."

In Part VI, after having concluded that the case was properly removed to federal court under the doctrine of complete preemption, we turn to the review of the district court's order dismissing the case.

III

The parties do not dispute that the Prudential plan, of which Singh is a participant, is an employee benefit plan regulated by ERISA. They differ on whether ERISA preempts the Maryland HMO Act,

which would prohibit Prudential, an HMO subject to Maryland regulation, from enforcing the subrogation provision in the plan against Singh.

Section 514(a) of ERISA, containing the "preemption clause," provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

29 U.S.C. § 1144(a). Defining the scope of this preemption by any State law that "relates" to an employee benefit plan, this preemption clause is recognized to be "broad" and "expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324 (1997) (reviewing the Court's many previous acknowledgments that ERISA's preemption provision is "clearly expansive," has a "broad scope" and an "expansive sweep," is "broadly worded," "deliberately expansive," and "conspicuous for its breadth").

Subsection (b) referred to in § 514(a) contains the "saving clause," which excepts from the preemption clause any State law regulating, among other things, insurance. It provides:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). The scope of the saving clause is limited by the "deemer clause," subparagraph (B) referred to in the saving clause, which provides:

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State

purporting to regulate insurance companies [or] insurance contracts.

29 U.S.C. § 1144(b)(2)(B).

We apply these provisions of § 514 sequentially in determining whether the subrogation prohibition of the Maryland HMO Act is preempted by ERISA.

First, the parties do not dispute that the provisions of the Maryland HMO Act that have been construed to prohibit subrogation by HMOs prior to June 2000 "relate to" an employee benefit plan for the purposes of § 514(a). Indeed, both the Supreme Court and this court, recognizing the expansive sweep of § 514(a) preemption, have held that State antisubrogation laws "relate to" an employee benefit plan. *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) ("Pennsylvania's antisubrogation law 'relate[s] to' an employee benefit plan"); *Hampton Indus., Inc. v. Sparrow*, 981 F.2d 726, 729 (4th Cir. 1992) (holding that a North Carolina law limiting subrogation "'relate[s] to' an employee benefits plan within the meaning of the preemption clause").

The more complex question is whether the saving clause, § 514(b)(2)(A), excepts from application of the preemption clause the State subrogation prohibition on the basis that the prohibition "regulates insurance." Prudential argues that the saving clause does not apply here for two reasons. First, it argues that the Maryland HMO Act is not a regulation of insurance because it regulates HMOs, and under Maryland law, HMOs are classified as healthcare providers rather than insurers. Second, it argues more broadly that, in any event, antisubrogation laws are not regulations of insurance.

Neither of Prudential's arguments is persuasive. Prudential's first argument — that the Maryland HMO Act does not regulate insurance because HMOs are not considered insurers in Maryland — is based principally on the fact that the HMO Act is located in the Maryland Health-General Article of the Maryland Code. Prudential points to statutory language providing that "the General Assembly intends to . . . exempt health maintenance organizations from the insurance laws of this State, except as set forth in this subtitle." Md. Code Ann., Health-Gen. II § 19-702. But the exception at the end of the quoted

language indicates that HMOs are not *categorically* exempted from insurance laws. Nor need it mean that the HMO Act does not, or any law concerning HMOs could not, provide its own form of insurance law.

More fundamentally, Prudential's argument fails because it wanders from the guideposts established by the Supreme Court for determining the applicability of the saving clause, advancing instead a formalistic argument that has already been rejected. The Supreme Court recently clarified the test for determining the applicability of the saving clause, reducing it to two factors:

> First, the state law must be specifically directed toward entities engaged in insurance. Second . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

*Kentucky Ass'n of Health Plans, Inc. v. Miller*, 123 S. Ct. 1471, 1479 (2003) (citation omitted). In so holding, the Court in *Miller* made "a clean break from the McCarran-Ferguson factors" that previously served as "considerations" in the saving-clause analysis but which ultimately "added little to the relevant analysis." *Id.* at 1478-79. Nonetheless, it retained the mandate to focus not on how a regulated entity is classified, but on whether the State law is aimed at the provision of insurance.

In *Metropolitan Life Insurance Co. v. Massachusetts*, for example, the insurer argued that a Massachusetts law requiring certain mental health coverage was "in reality a health law that merely operates on insurance contracts to accomplish its end, and that it [was] not the kind of traditional insurance law intended to be saved by § 514(b)(2)(A)." 471 U.S. 724, 741 (1985). The Supreme Court found this argument "unpersuasive," and stated that Congress did not distinguish between "traditional and innovative insurance laws." *Id.*; *see also id.* ("Appellants assert that . . . laws that regulate the substantive terms of insurance contracts are more recent innovations more properly seen as health laws rather than as insurance laws, which § 514(b)(2)(A) does not save. This distinction reads the saving clause out of ERISA entirely").

More recently, in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366 (2002), an HMO proffered a similar argument:

> Rush contends that seeing an HMO as an insurer distorts the nature of an HMO, which is, after all, a health care provider, too. This, Rush contends, should determine its characterization, with the consequence that regulation of an HMO is not an insurance regulation within the meaning of ERISA.

The Court, however, rejected this argument:

> The answer to Rush is, of course, that an HMO is both: it provides health care, and it does so as an insurer. Nothing in the saving clause requires an either-or choice between health care and insurance in deciding a preemption question, and as long as providing insurance fairly accounts for the application of state law, the saving clause may apply.

*Id.* at 367.

Thus, we reject Prudential's argument that the subrogation prohibition is not saved because HMOs should not be considered insurers.

Prudential's second argument maintains that, even under the framework established by the Supreme Court, the antisubrogation provisions of the Maryland HMO Act are not "saved" from preemption because "subrogation laws are not laws that regulate the business of insurance." When making this argument, Prudential did not have the benefit of *Miller*, where the Supreme Court jettisoned the portion of the saving-clause analysis that, applying the McCarran-Ferguson factors, focused on whether the state law regulated the "business of insurance":

> Rather than concerning itself with whether certain practices constitute "[t]he business of insurance," or whether a state law was "enacted . . . *for the purpose of* regulating the business of insurance," [§ 514(b)(2)(A)] asks merely whether a state law is a "law . . . which regulates insurance, banking, or securities."

123 S. Ct. at 1478. But even before *Miller*, which did not work any fundamental change in the substance of saving-clause analysis, both the Supreme Court and this court rejected Prudential's argument. In *FMC Corp. v. Holliday*, the Supreme Court dealt precisely with the question of whether a State antisubrogation law was saved from pre-emption under § 514(b)(2)(A), and held that it was:

> There is no dispute that the Pennsylvania [antisubrogation] law falls within ERISA's insurance saving clause . . . . [The antisubrogation law] directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain. It does not merely have an impact on the insurance industry; it is aimed at it. This returns the matter of subrogation to state law. Unless the statute is excluded from the reach of the saving clause by virtue of the deemer clause, therefore, it is not pre-empted.

498 U.S. at 60-61 (citations omitted). Following *FMC Corp.*, we noted that "limits on subrogation recoveries appear to be aimed at the insurance industry, and therefore would also appear to come within the scope of the saving clause." *Hampton Indus., Inc.*, 981 F.2d at 729-30 (holding that the State law limiting subrogation was not saved, however, because of the applicability of the deemer clause).

Controlled by the holding of *FMC Corp.* and consistent with our observation in *Hampton Industries*, we conclude that the subrogation prohibition of the Maryland HMO Act applicable before June 2000 is a state-law regulation of insurance that is saved from preemption under § 514(b)(2)(A). But notwithstanding the holding of *FMC Corp.*, it is difficult to imagine an antisubrogation law of this type as anything other than an insurance regulation, as it addresses who pays in a given set of circumstances and is therefore directed at spreading policyholder risk. *See Miller*, 123 S. Ct. at 1479 (directing focus on whether the State law is "specifically directed toward entities engaged in insurance" and "substantially affect[s] the risk pooling arrangement between the insurer and the insured").

While the application of the saving clause is limited by the deemer clause, Prudential abandoned its argument made below that the deemer clause is applicable. The deemer clause operates to "exempt

*self-funded* ERISA plans from State laws that 'regulat[e] insurance' within the meaning of the saving clause." *FMC Corp.*, 498 U.S. at 61 (emphasis added). Because the Prudential plan at issue here is an insured plan, the deemer clause does not operate to exempt it from application of the HMO Act, which is saved under § 514(b)(2)(A).

In sum, we agree with Singh that the saving clause contained in § 514(b)(2)(A) appears to exempt the subrogation prohibition of the Maryland HMO Act from preemption by ERISA. But reaching this tentative conclusion does not end the inquiry because we must still assess whether the otherwise saved State law nonetheless frustrates the overall purposes of ERISA by inappropriately supplementing or supplanting ERISA's exclusive remedies. *See Conover v. Aetna US Health Care, Inc.*, 320 F.3d 1076, 1078 (10th Cir. 2003) ("A state law otherwise regulating insurance within the meaning of § 514(b)(2)(A) may still be preempted if it allows plan participants and beneficiaries 'to obtain remedies under state law that Congress rejected in [ERISA]'" (citations omitted)).

IV

The Supreme Court has recognized a "limited exception from the saving clause" created by the "overpowering" reach of § 502(a) of ERISA, in which Congress set forth the *exclusive* remedies available for claims relating to employee benefit plans. *Rush*, 536 U.S. at 381, 375. The Supreme Court concluded that State laws regulating insurance could be applied to ERISA plans, but only so long as doing so would not undermine the objectives of § 502(a). *Id.* at 387; *id.* at 377 ("Although we have yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the 'reservation of the business of insurance to the States,' we have anticipated such a conflict, with the state insurance regulation losing out if it allows plan participants 'to obtain remedies . . . that Congress rejected in ERISA'" (citations omitted)).

In *Rush*, the Court was presented with a State law that authorized HMO members to demand an independent medical review of a decision to deny coverage for a procedure deemed by the HMO to be medically unnecessary. Concluding that this law was exempt from preemption by the saving clause and did not create a new claim or

enlarge the remedies prescribed by § 502(a), the Court held that the saved State law did not interfere with § 502(a) and therefore would be enforced as part of an ERISA plan. The Court explained that the saved State law did not create a conflicting enforcement scheme or an arbitration system that would supplement the specific remedies prescribed by § 502(a), but rather provided a standard for making medical judgments:

> The practice of obtaining a second opinion . . . is far removed from any notion of an enforcement scheme, and once [the State law] is seen as something akin to a mandate for a second-opinion practice in order to insure sound medical judgments, the preemption argument that arbitration under [the State law] supplants judicial enforcement runs out of steam.

> \* \* \*

> This case therefore does not involve the sort of additional claim or remedy exemplified in *Pilot Life*, *Russell*, and *Ingersoll-Rand*, but instead bears a resemblance to the claims-procedure rule that we sustained in *UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358 (1999), holding that a state law barring enforcement of a policy's time limitation on submitting claims did not conflict with § 1132(a) [§ 502(a) of ERISA], even though the state "rule of decision," *id.*, at 377, could mean the difference between success and failure for a beneficiary. The procedure provided by [the State law] does not fall within *Pilot Life*'s categorical preemption.

*Rush*, 536 U.S. at 383-84, 380.

Thus, while a State law purporting to supply additional *remedies* to claimants under ERISA plans would impermissibly compete with § 502(a) remedies, and therefore not be saved from preemption as a result of the limited exception from the saving clause, a State law simply mandating or prohibiting certain terms of policy coverage does not force a choice between State regulation of insurance and the prescribed remedies of § 502(a) and therefore may be saved under

§ 514(b)(2)(A). *Compare Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990) (holding preempted State law that "purports to provide a *remedy* for the violation of a right expressly guaranteed by [ERISA] and exclusively enforced by § 502(a)" (emphasis added)), *and Pilot Life*, 481 U.S. 41 (holding that, in light of the exclusive § 502(a) remedies, a State breach-of-contract claim that could result in punitive damages — a remedy not available to the claimant under the relevant ERISA provisions — was not saved under § 514(b)(2)(A)), *with Rush*, 536 U.S. at 355, 379-80 (holding that a State law giving HMO members a right to independent review of certain denials of benefits was saved from preemption because, although the State law replaced a term of the insurance contract, "the relief ultimately available would still be what ERISA authorizes in a suit for benefits under § [502(a)]"), *and Metropolitan Life*, 471 U.S. 724 (holding that a State law mandating that insurance policies provide certain mental health coverage was saved from preemption under the saving clause). Thus, although a State law may not supplement or supplant § 502(a) remedies available to ERISA participants and beneficiaries for claims regarding plan benefits, *see Pilot Life*, 481 U.S. at 56, it makes "scant sense" to suggest that States are "powerless to alter the terms of the insurance relationship in ERISA plans," *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 375-76 (1999); *see also Metropolitan Life*, 471 U.S. at 744 ("Nor is there any contrary case authority suggesting that laws regulating the terms of insurance contracts should *not* be understood as laws that regulate insurance").

The State regulation of insurance at issue here — the subrogation prohibition of the Maryland HMO Act — is substantially farther removed from any conflict with § 502(a) than was the second-opinion procedure in *Rush*. Indeed, Prudential argues that the subrogation prohibition does not create any right of action under the State HMO Act or under State common law.* Regardless of whether this is correct, the subrogation prohibition that is saved is not integrally related to the enforcement scheme for violation of the Maryland HMO Act and thus

---

*Prudential may not be totally accurate in this contention, however. In regulating HMOs, the Maryland HMO Act creates a complaint system within the agency structure for correcting violation of the Act's provisions, and the Act authorizes the issuance of administrative orders that may be appealed administratively and to the courts.

stands on its own as a substantive provision governing the allocation of risk assumed by an HMO contract. In that regard, it creates no conflict with ERISA's exclusive provision of remedies under § 502(a). While ERISA's civil enforcement scheme contained in § 502(a) creates an exclusive set of remedies that even a state regulation of insurance may not supplement or supplant, ERISA "contains almost no federal regulation of the terms of benefit plans," *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. at 732, that would conflict with a substantive provision such as the subrogation prohibition.

Prudential's argument that the Maryland HMO Act's subrogation prohibition provisions supply a prohibited alternative remedy to the exclusive remedial scheme set forth in § 502(a) is not persuasive. The antisubrogation provision does not depend on any particular remedy but operates simply to define the scope of a benefit provided to members of HMOs in Maryland — i.e., entitlement to retain their full benefit and not have it reduced by recoveries from third parties. In this sense, it does not differ from any other State law mandating or regulating a contractual benefit. Thus, although the HMO Act negates the subrogation term of the plan here, it does not supply a prohibited alternative remedy, and "the relief ultimately available would still be what ERISA authorizes in a suit for benefits under § [502(a)]." *Rush*, 536 U.S. at 680. When describing the prohibited alternative remedy that it argues the HMO Act supplies, Prudential describes that remedy as "entitle[ment] under [Singh's] Plan to receive the benefit of having her healthcare paid for by Prudential." But this argument ignores the distinction between defining a *benefit* and *remedying* improper administration or denial of a defined benefit, such that, under Prudential's logic, any State law defining a plan member's entitlement to certain benefits could not be saved from preemption. This logic has no basis in law and makes "scant sense." *UNUM Life*, 526 U.S. at 375.

Because we conclude that the subrogation prohibition of the Maryland HMO Act does not supplement or supplant ERISA's exclusive remedies by creating a "prohibited alternative remedy," *Rush*, 536 U.S. at 379, it remains "saved" and therefore "supplies the relevant rule of decision" in a § 502(a) claim to enforce the provision of State law, *UNUM Life*, 526 U.S. at 377. A State law preserved as a regulation of insurance under § 514(b)(2)(A) may supply a substantive term

or mandate a benefit in an employee benefit plan, but once that term or benefit becomes part of the plan, a suit to enforce it may only be brought under § 502(a). In such a suit to enforce the terms of the plan, the State law merely operates to define the benefits that may be enforced under § 502(a). *See Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) (recognizing "the distinction between a substantive state insurance law, which if saved will provide 'a relevant rule of decision' in an ERISA civil enforcement action, and a state judicial remedy, which is conflict-preempted under *Pilot Life even if* it was created or authorized by a state insurance statute" (citations omitted)).

Having concluded that the Maryland HMO Act is saved in that it satisfies the two-part test set forth in *Miller* and does not impermissibly conflict with § 502(a), we turn to the question of whether the district court properly refused to remand this case to State court. This question is resolved by determining whether Singh's claims, pleaded under State common law, fall within the scope of § 502(a) so that they are to be treated as federal claims under ERISA through the doctrine of "complete preemption" and therefore are subject to removal jurisdiction.

V

Although Singh's complaint relies on the application of the Maryland HMO Act's subrogation prohibition enforced through common-law theories of unjust enrichment and negligent misrepresentation, the question remains whether it in effect seeks a benefit due under the terms of the Prudential plan. Even though the subrogation prohibition from State law is saved and the Prudential plan must be enforced as modified thereby, as we have concluded, if Singh's claims fall within the scope of § 502(a) of ERISA, they nonetheless will be "completely preempted" with the effect that the claims are converted to federal claims and the case is therefore removable to federal court.

In drafting ERISA, "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying State causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objective of Congress." *Pilot*

*Life*, 481 U.S. at 52. The provisions of § 502(a) authorize plan participants or beneficiaries "to file civil actions to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA." *Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). If a state-law claim falls within the scope of § 502(a), the complete-preemption doctrine set forth in *Metropolitan Life v. Taylor*, 481 U.S. 58, 67 (1987), provides that the state-law claim is "necessarily federal in character" such that it "arise[s] under" federal law and is removable to federal court. The Court in *Metropolitan Life v. Taylor* found that § 502(a) exhibited the "extraordinary pre-emptive power" also found with respect to § 301 of the Labor Management Relations Act ("LMRA") "that converts an ordinary state common law complaint [in the Act's scope] into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65. Thus, if Singh's state-law claims fall within the scope of § 502(a), they are not only properly removed to federal court, they are also "treated as federal causes of action." *Marks*, 322 F.3d at 323. But to the extent that state-law claims seek remedies that fall outside the scope of § 502(a), they are rejected as preempted. *Id.*

In this case, the complaint, relying on state-law causes of action, nonetheless seeks some remedies that undoubtedly fall within the scope of § 502(a), even if others might fall outside of its scope.

Relying on theories of unjust enrichment and negligent misrepresentation under Maryland law, Singh's class-action complaint seeks a *declaratory judgment* that the subrogation term of the plan is illegal under the Maryland HMO Act, that Prudential negligently misrepresented its rights under the plan, that the HMO members need not pay subrogation claims asserted by Prudential, and as to those members who have already paid, that Prudential has been unjustly enriched. The complaint also requests *equitable restitution* of amounts paid and demands *compensatory damages*. Finally, the complaint requests an *injunction* against future violations, including a prohibition against Prudential from "increasing premiums, co-payments, or other charges paid by class members when such increases are in whole or in part for the purpose of recouping the losses or expenses incurred in connection with this litigation." In sum, Singh seeks the return of amounts paid under the authority of the subrogation clause in the Pru

dential plan and demands consequential damages, as well as protective adjudications.

For a substantial part of the relief requested, Singh's complaint asserts entitlement to undiminished benefits under the Prudential plan. Because Prudential successfully pursued a subrogation claim against Singh's recovery from a third party, the benefit sought is the return of funds taken pursuant to the plan's subrogation term that was negated by the Maryland HMO Act. At least this portion of the remedies sought falls within the scope of those provided by § 502(a), particularly insofar as Singh's individual claim for relief is concerned. Section 502(a)(1)(B) allows a plaintiff to bring a claim "to recover benefits due to [her] under the terms of a plan," while § 502(a)(3) allows her to obtain injunctive or other appropriate equitable relief.

Singh's claim to recover the portion of her benefit that was diminished by her payment to Prudential under the unlawful subrogation term of the plan is no less a claim for recovery of a plan benefit under § 502(a) than if she were seeking recovery of a plan benefit that was denied in the first instance. Whether a State law defines the quantum of a plan benefit by negating subrogation terms that would diminish the benefit, as here, or defines a plan benefit by mandating coverage of certain treatments, as in *Metropolitan Life v. Massachusetts*, 471 U.S. 724 (1985), ERISA's complete dominion over a plan participant's claim to recover a benefit due under a lawful application of plan terms is not affected by the fortuity of *when* a plan term was misapplied to diminish the benefit. Thus, for purposes of complete preemption under § 502(a), a claimant who is denied a benefit is no different than a claimant who is faced with an invoice from the insurer for the return of a benefit paid or a claimant who has paid such an invoice, because resolution in each case requires a court to determine entitlement to a benefit *under the lawfully applied terms* of an ERISA plan. The jurisdictional aspect of ERISA's remedial scheme, which overpowers even the well-pleaded complaint rule, cannot itself be overpowered by clever or fortuitous maneuvers. *See, e.g., Carducci v. Aetna U.S. Healthcare*, 204 F. Supp. 2d 796, 803 (D. N.J. 2002) (holding that plaintiffs' claims to "regain the whole benefit provided to them by defendants, including those amounts paid in subrogation pursuant to the terms of the plans" were claims for "benefits due under the terms of the plan" and therefore completely preempted).

*But see Arana v. Ochsner Health Plan, Inc.*, 302 F.3d 462, 470 (5th Cir. 2002) (holding that a plan participant's claim disputing enforcement of a plan's subrogation term in light of a State antisubrogation law "is not one for benefits under section 502(a)"), *reh'g en banc granted*, 319 F.3d 205 (5th Cir. 2003).

In concluding that the fortuity of *when* a plan term was misapplied to diminish a benefit is not determinative of whether Singh's claim is a claim for a benefit, we hold that when the validity, interpretation or applicability of *a plan term* governs the participant's entitlement to a benefit or its amount, the claim for such a benefit falls within the scope of § 502(a). *Compare Administrative Committee v. Gauf*, 188 F.3d 767 (7th Cir. 1999) (holding that a claim fell within the scope of § 502(a)(3) because it was "most appropriately characterized as a reimbursement right *under the terms of the Plan* and therefore a matter of federal law") (emphasis added), *with Speciale v. Seybold*, 147 F.3d 612 (7th Cir. 1998) (holding that a plan participant's suit requesting that a court apportion a settlement recovery was not completely preempted because "the claim [did] not involve the interpretation of contract terms"). Because Singh's state-law claims cannot be resolved without passing on the validity of the subrogation term of her ERISA plan, those claims are within the scope of § 502(a) and therefore are completely preempted.

Singh's claim for equitable relief is also identifiable as a claim under § 502(a)(3). *See*, *e.g.*, *Lyons v. Philip Morris Inc.*, 225 F.3d 909, 912-13 (8th Cir. 2000) (holding that plan trustees' state-law claims to recover, in connection with the plan's subrogation term, benefits paid was completely preempted under § 503(a)(3)'s exclusive application to "suits to enforce the terms of the plan").

Therefore, to the extent that Singh's claims seek return of a plan benefit unreduced by subrogation and equitable relief, they undoubtedly fall within the scope of § 502(a) and for that reason are "completely preempted." The district court therefore did not err in denying plaintiff's motion to remand.

## VI

Because we have found that at least some of Singh's claims are completely preempted, leading to their conversion into federal claims

and their removal to federal court, those completely preempted claims must now be decided by the district court. In dismissing the claims based simply on preemption, the district court failed to appreciate that the claims *completely* preempted were converted into federal claims that need to be decided as federal claims under § 502(a). *See Pilot Life*, 481 U.S. at 56 ("[A]ll suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [should] be treated as federal questions governed by § 502(a)"); *Marks*, 322 F.3d at 327 (determining that plaintiff's state-law claims were completely preempted and then assessing their merits, treating them as § 502(a) claims); *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("Nevertheless, when a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502"); *see also Wood v. Prudential Insurance Co.*, 207 F.3d 674, 682 (3d Cir. 2000) (Stapleton, J., dissenting) ("If a claim based on state law is completely preempted, however, it is treated as a federal claim; a district court has federal question removal jurisdiction to entertain it, and the claim, after removal, should go forward in the district court as a federal claim"); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir. 1996) (remanding plaintiff's state-law claim to the district court, after characterizing it as a § 502(a) claim, to permit plaintiff to amend the complaint and pursue relief under § 502(a)). The conclusion that a state-law claim should be recharacterized as a claim arising under federal law and assessed on the merits under federal law is supported by analogous jurisprudence in the area of complete preemption under § 301 of the LMRA. *See Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851 (1987) (determining that plaintiff's state-law claim was completely preempted by § 301 of the LMRA and then remanding to the court of appeals for reconsideration of the timeliness of the plaintiff's claim under § 301).

This does not mean that all of Singh's claims for damages asserted under State law must be recognized by the district court on remand. Rather, the district court must consider only remedies authorized by § 502(a) and must reject all others.

On remand, to facilitate its consideration of Singh's claims, the district court may choose to grant plaintiff leave to amend her complaint

in order to clarify the exact scope of relief requested under § 502(a). Repleading, however, is not necessary for the plaintiff's claims to be treated as arising under § 502(a). Regardless of how the plaintiff's claims are ultimately pleaded, the remedies available to plaintiff in this case where Singh seeks to enforce the terms of an ERISA plan, as modified by the Maryland HMO Act, are limited to those remedies set forth in § 502(a).

## VII

In sum, we conclude that Singh's State common-law claims are claims for benefits due under the terms of an ERISA plan and are therefore "completely preempted," such that federal removal jurisdiction exists. In reaching the conclusion that Singh's claims seek to enforce a term of the Prudential plan, we conclude that, although the Maryland HMO Act "relates" to an employee benefit plan, it is saved as a State regulation of insurance that does not conflict with § 502(a) of ERISA, such that it defines a term of the ERISA plan. Because Singh's claims seek to enforce a term of the Prudential plan, as so modified by State law, they are within in the scope of § 502(a) and must be adjudicated as federal claims under that section. Finally, we conclude that any claimed relief that supplements, supplants, or conflicts with the remedies provided by § 502(a) must be rejected as preempted.

Accordingly, we affirm the district court's ruling denying plaintiff's motion to remand, reverse its ruling granting Prudential's motion to dismiss, and remand to the district court for consideration of plaintiff's claims to the extent they fall within the scope of § 502(a) of ERISA. In doing so, we express no opinion on whether all of the relief requested in the current complaint is consistent with the remedies supplied under § 502(a).

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*