**Jean LEVINE, On behalf of herself and all others similarly situated**

v.

**UNITED HEALTHCARE CORPORATION (DC NJ 01-cv-04964)**

Noreen Bogurski

v.

Horizon Blue Cross Blue Shield
of New Jersey (DC NJ 01-
cv-05339)

Benjamin Edmonson, On behalf
of himself and all others
similarly situated

v.

Jersey; Horizon Healthcare Services,
Inc., dba Horizon Blue Cross Blue
Shield of New Jersey (DC NJ 01-cv-
05812)

United Healthcare Corporation Horizon
Blue Cross Blue Shield of New Jersey,
Appellants at No. 04-1224

Jean Levine, On behalf of herself and
all others similarly situated

v.

United Healthcare Corporation
(DC NJ 01-cv-04964)

Noreen Bogurski

v.

Horizon Blue Cross Blue Shield
of New Jersey (DC NJ 01-
cv-05339)

Jean Levine, Noreen Bogurski, * Ben-
jamin Edmonson, Appellants at
No. 04-1225.

* (Dismissed pursuant to Court's
order of 11/17/04).

Nos. 04–1224, 04–1225.

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 2004.

March 16, 2005.

William F. Hanrahan, (Argued), Edward A. Scallet, Jason H. Ehrenberg, Groom Law Group Chartered, Washington, DC, for Appellants/Cross Appellees United Healthcare Corp.

Edward S. Wardell, (Argued), Kelley Wardell & Craig, Haddonfield, NJ, for Appellants/Cross Appellees Horizon Blue Cross, etc., et. al.

Donna S. Moffa, (Argued), Trujillo Rodriguez & Richards, Haddonfield, NJ, for Appellees/Cross Appellants Noreen Bogurski.

Frank P. Solomon, (Argued), Weitz & Luxenberg, Cherry Hill, NJ, Natalie Bennett, Shepherd Finkelman Miller & Shah, Washington Professional Campus, Turnersville, NJ, for Appellees/Cross Appellants Jean Levine, etc.

Before NYGAARD and GARTH, Circuit Judges and POLLAK,* District Judge.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

These interlocutory cross-appeals require us to address two different facets of the preemptive power of the Employee

---

* Honorable Louis H. Pollak, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*, as it applies to the instant dispute over an insurer's claimed right of subrogation from an insured's third-party tort recovery. First, the insured ERISA plan participants, plaintiffs below, argue that the District Court should have remanded their claims to state court for lack of federal subject matter jurisdiction. Second, the insurance providers, defendants below, maintain that the District Court should have dismissed the claims entirely, as they depend on state law that is expressly preempted by ERISA § 514, 29 U.S.C. § 1144. Finally, the insurance providers argue that the District Court should have dismissed the claims because the state law decision on which they rely, *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), should not apply retroactively. All three questions raise issues of first impression in this circuit. We find the insurance providers' arguments more persuasive as to the first two issues, rendering consideration of *Perreira's* retroactivity unnecessary. Jurisdiction is proper in the District Court, but the underlying claims are preempted by ERISA and must be dismissed.

## I.

Jean Levine, Noreen Bogurski, and Benjamin Edmondson (the "Insureds") were injured by third-parties in separate, unrelated events and are the Appellees/Cross–Appellants in this appeal. Their health insurance providers, United Healthcare Corporation and Horizon Blue Cross and Blue Shield of New Jersey,[1] are the Appellants/Cross–Appellees (the "Providers"). At the time of the injuries, the Providers fulfilled their responsibilities to the Insureds under each health insurance policy by paying at least a portion of the Insureds' medical expenses.

Each Insured then filed suit against the third party responsible for his or her injury. At that time, a New Jersey Department of Insurance Regulation permitted health insurance policies to include reimbursement and subrogation clauses. N.J. ADMIN. CODE tit. 11, § 4–42.10 (1993) (repealed August 5, 2002).[2] Each of the rele-

---

1. Horizon Blue Cross and Blue Shield of New Jersey was the health insurance provider for both Bogurski and Edmonson. With respect to Edmonson, they were Horizon Healthcare Services, Inc., doing business as, Horizon Blue Cross and Blue Shield.

2. The relevant regulation that provided for reimbursement and subrogation was repealed on August 5, 2002 and replaced with a "Prohibition on subrogation/third party liability provisions." The Regulation, prior to its repeal, was as follows:

11:4–42.10 **Provisions for subrogation and repayment of benefits**

(a) Group policies and certificates providing health insurance may contain subrogation provisions that require the return to the insurer by a covered person of benefits paid for illness or injury up to the amount a covered person received from a third party through settlement, a satisfied judgement or other means, as compensation for the medi-

cal costs of such illness or injury, subject to the following:

1. Repayment of benefits shall be required only where the amount received for the third party through settlement, judgment or other means are specifically identified as amounts paid for health benefits which have been paid by the insurer under the group policy or certificate.

2. The repayment shall not exceed the amount of benefits paid by the insurer under the group policy or certificate for the particular illness or injury.

3. The group policy and certificate shall allow the covered person to deduct from the repayment to the insurer the reasonable pro-rata expenses incurred in effecting the third party payment.

(b) Group policies and certificates providing health insurance may exclude or reduce the health benefits payable to or on behalf of a covered person to the extent that the covered person has already received payment from a third party for past or future health

vant health insurance policies had such a clause. Consequently, when the Insureds sued their respective tortfeasors, the Providers acted within the bounds of both the health insurance policies and the Department of Insurance regulation by seeking reimbursement from the Insureds for benefits paid under the health insurance policies. The Insureds then paid a portion of their tort settlement to the Providers to settle the reimbursement claims.[3]

Subsequent to these settlements between the Insureds and the Providers, the New Jersey Supreme Court announced a decision in *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001), holding that the Department of Insurance regulation conflicted with a New Jersey statute, and thus, was invalid.[4] As a result, subrogation and reimbursement provisions are no longer permitted in New Jersey health insurance policies. Notwithstanding their earlier settlements, the Insureds sued the Providers in New Jersey state court to recover the amounts they paid to reimburse the Providers.

## II. The District Court Proceedings

After being sued in New Jersey state court, the Providers removed the cases to federal court claiming complete ERISA preemption under section 502(a)(1)(B) of ERISA. The District Court denied the Insureds' motion to remand to state court. Concluding that the question of removal was a "conceptually unclear area of law," the District Court nonetheless determined that the Insureds sought to "recoup a benefit due under the plan," and thus, their claim was properly removed. The Court also denied the Insureds' request to certify the issue for appeal at that time.

The Providers also filed a motion to dismiss the claims. First, the Providers claimed that ERISA preempted New Jersey's statute; therefore, the statute did not apply to ERISA-governed plans. Second, they argued that the *Perreira* decision should not be applied retroactively.

The District Court concluded that the New Jersey statute was a statute "regulating insurance," and thus, was "saved" from ERISA preemption. First, as directed by the Supreme Court in *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the District Court made the "common sense determination" that the law was specifically directed toward the insurance industry because it was intended to directly affect and regulate that industry. Second, the Court tested the results of its common sense determination by examining the three factors listed in the McCarran–Ferguson Act[5] and

---

care costs for an illness or injury resulting from the negligence or intentional act of such third party.

(c) Except as set forth in (b) above, no policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party.

(d) Notwithstanding (a) or (b) above, disability income, long term care and accidental loss benefits and blanket insurance shall not be subject to subrogation or repayment of benefits received.

(e) Subrogation shall only be applicable when third party liability benefits may exist, subject to the restrictions set forth above.

**3.** Levine paid $11,000 to settle her reimbursement claim, Bogurski placed $11,000 in escrow to settle her reimbursement claim, and Edmondson paid $1,383.43 to settle his claim.

**4.** The *Perreira* decision held that the Department of Insurance Regulation, N.J. ADMIN. CODE tit. 11 § 4–42.10 (the "regulation"), directly conflicted with the statute regulating deductions from plaintiff's awards in personal injury and wrongful death actions, N.J. STAT. ANN. § 2A:15–97 (2000) (the "statute").

**5.** The three McCarran–Ferguson factors are (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral

found that these factors supported the conclusion that the law regulated insurance. *See Moran,* 536 U.S. at 366, 122 S.Ct. 2151. Thus, the District Court found that the law was "saved" from ERISA preemption.

■ Having determined that New Jersey's statute applied to ERISA-governed plans, the District Court turned to the question of whether the *Perreira* decision should be applied retroactively. The District Court determined that, under New Jersey law, prospective application [6] is appropriate only if: "(1) the parties and the community justifiably relied on the prior rule, (2) the purpose of the new rule will not be advanced by retroactive application, and (3) retroactive application of the rule may have an adverse effect on the administration of justice." (App. at 40 (citing *Coons v. American Honda Motor Co.,* 96 N.J. 419, 476 A.2d 763, 767 (1984))). Here, the District Court concluded that the *Perreira* decision reflected New Jersey's existing law and was not new and unanticipated. Consequently, it held that the *Perreira* decision applied retroactively.

Following the denial of the motion to dismiss, the District Court certified three issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

> (1) whether the antisubrogation rule contained in N.J.S.A. 2A:15–97, as inter-

preted by the New Jersey Supreme Court in *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001), applies to defendant health insurers because it is not conflict preempted under ERISA section 514(a) because it is "saved" as a state law that regulates insurance;

> (2) whether *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001), applies retroactively to plaintiffs' pre-*Perreira* health insurance plans; and,

> (3) whether plaintiffs' unjust enrichment claims for monies taken pursuant to subrogation and reimbursement provisions in their ERISA health plans are claims for "benefits due" within the meaning of ERISA section 502(a).[7]

We granted permission for the appeal (issues one and two) and cross-appeal (issue three) on January 16, 2004 and have jurisdiction pursuant to 28 U.S.C. § 1292(b).

### III. The Removal Claim: Preemption under Section 502(a)

■ We address the cross-appeal first because it requires us to examine our jurisdiction. We exercise plenary review over challenges to our subject matter jurisdiction. *Pryzbowski v. U.S. Healthcare Inc.,* 245 F.3d 266, 268 (3d Cir.2001). *See also Arana v. Ochsner,* 338 F.3d 433, 437 (5th Cir.2003) (*en banc* ).

---

part of the policy relationship between the insurer and the insured; and, (3) whether the practice is limited to entities within the insurance industry. *See Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 366, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). These factors are no longer used in determining whether a law is saved from ERISA preemption. *Kentucky Assoc. of Health Plans Inc. v. Miller,* 538 U.S. 329, 341–42, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003).

**6.** Under New Jersey law, all opinions are applied retroactively unless prospective application is deemed appropriate. *See, e.g.,*

*Henderson v. Camden County Mun. Util. Auth.,* 176 N.J. 554, 826 A.2d 615, 620 (2003). Thus, absent a specific finding that the *Perreira* opinion should be limited to prospective application, the opinion would be applied retroactively.

**7.** Although the District Court cited to the New Jersey Reports, we cite to the Atlantic Reporter for the *Perreira* decision throughout this opinion. It should also be noted that the correct citation to the New Jersey Reports for the *Perreira* decision is 169 N.J. 399, 778 A.2d 429.

The Insureds brought their claims in New Jersey state court as state claims for unjust enrichment. Therefore, they claim, federal jurisdiction is inappropriate and the cases should be remanded to state court. In general, under the well-pleaded complaint rule, it is true that the federal courts have federal question jurisdiction only when a federal claim appears in the complaint, and not when a federal preemption defense may eventually be raised in litigation. *Pryzbowski*, 245 F.3d at 271. Certain federal laws, however, including ERISA, so sweepingly occupy a field of regulatory interest that any claim brought within that field, however stated in the complaint, is in essence a federal claim. In such cases, the doctrine of complete preemption provides federal jurisdiction and allows removal to federal court. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). State law claims seeking relief within the scope of section 502(a) of ERISA are within this select group of cases where Congress has completely preempted an area of law.[8] *Metro. Life*, 481 U.S. at 62–66, 107 S.Ct. 1542; *Pryzbowski*, 245 F.3d at 271–72. Thus, if the claim is one that falls within section 502(a) of ERISA, removal to federal court is proper. *Id.*

Section 502(a) allows a participant in an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The District Court found that the Insureds' claims were actually claims for benefits

due: "[e]ssentially plaintiffs seek to regain the whole benefit provided to them by defendants, including those amounts paid in subrogation pursuant to the terms of the plans.... [T]his Court must determine the content of the ERISA plan and whether the New Jersey Supreme Court case in *Perreira* applies to the subrogation provision in plaintiffs' ERISA plans." (App. at 193).

In *Pryzbowski*, we laid out a framework for determining whether a case is completely preempted under section 502(a) of ERISA. In order to ensure that Congress's intent of giving section 502(a) "extraordinary preemptive force" was fulfilled, we utilized the two categories of ERISA cases, originally set out by the Supreme Court in *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). *Pryzbowski*, 245 F.3d at 271. The first category involves cases where the claim challenges the administration of, or eligibility for, benefits. These cases fall within the scope of 502(a) and are preempted. *Id.* at 273. The second group of cases challenges the quality of the medical treatment performed and is not preempted. *Id.* As noted by the District Court, this case does not fall squarely within either category. Thus, we must look beyond the framework set out in *Pryzbowski* to determine whether this case falls within section 502(a).

At the time of the District Court's ruling on the removal question, May 28, 2002, no Court of Appeals had considered whether the type of case before us was preempted under section 502(a) of ERISA. Since the District Court's initial ruling, however, the

---

8. When addressing preemption under section 502(a) we are dealing with "complete preemption," as opposed to "express preemption" which arises under section 514 of ERISA. *Pryzbowski*, 245 F.3d at 270. Complete preemption is a jurisdictional concept, and is distinguishable from questions which arise under section 514. *Id. See also, Barber v. UNUM Life Ins. Co.*, 383 F.3d 134, 141 (3d Cir.2004) (explaining express preemption under ERISA § 514(a)).

Fourth and Fifth Circuits have considered whether similar cases are subject to preemption under ERISA. *Arana,* 338 F.3d 433; *Singh v. Prudential Health Care Plan Inc.,* 335 F.3d 278 (4th Cir.2003). Both Courts of Appeal held that the federal courts are the proper forums for these disputes. In *Arana,* the Fifth Circuit held that federal jurisdiction was proper in a case strikingly similar to the one here. There, the plaintiff claimed that under Louisiana law his health insurance company had no right to reimbursement of health benefits after the plaintiff recovered in a tort action. The Court held that the plaintiff's claim was properly characterized as a claim for "benefits due" or to "enforce his rights under the plan," either of which would provide jurisdiction. *Arana,* 338 F.3d at 438. It described the situation as follows:

> As it stands, Arana's benefits are under something of a cloud, for OHP is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, Arana has not fully 'recovered' them because he has not obtained the benefits free and clear of OHP's claims. Alternatively, one could say that Arana seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan. *Id.*

In *Singh,* the Fourth Circuit addressed whether claims of unjust enrichment and negligent misrepresentation relating to subrogation and reimbursement actions of the insurer were claims for "benefits due." Like the Fifth Circuit, the Fourth Circuit found that ERISA controlled and removal was appropriate because subject matter jurisdiction is not affected by "the fortuity of *when* a plan term was misapplied to diminish the benefit." *Singh,* 335 F.3d at 291 (emphasis in original).

Here, the Insureds claim that they were entitled to certain health benefits and that the Providers wrongly sought the return of those benefits. Even more than in *Arana,* the Insureds' claim here is for benefits due. The Insureds have already paid back a portion of their benefits. Thus, they claim essentially that they are entitled to have certain health insurance claims paid under their ERISA plans. It is impossible to determine the merits of the Insureds' claims without delving into the provisions of their ERISA-governed plans.

■ We agree with the reasoning of the Courts of Appeal for the Fourth and Fifth Circuits. Where, as here, plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for "benefits due" and federal jurisdiction under section 502(a) of ERISA is appropriate. Such a rule comports with our earlier jurisprudence because, although not directly analogous, such claims are more like challenges to the "administration of benefits" than challenges to the "quality of benefits received." *See Pryzbowski,* 245 F.3d at 273.

Although the Insureds have attempted to characterize their claim as one looking only at state law, the essence of the claim concerns an ERISA plan. Therefore, we conclude that federal subject matter jurisdiction is appropriate.

## IV. Express Preemption Under Section 514 of ERISA

Next, we turn to the District Court's denial of the Providers' motion to dismiss. Our review of the District Court's decision is plenary. *Pryzbowski,* 245 F.3d at 268. We accept all factual allegations in the complaint as true and draw reasonable inferences from those allegations. *Id.*

The first issue is whether ERISA preempts the New Jersey statute on which the Insureds' claims rely. If ERISA preempts the New Jersey statute, then the reimbursement provisions in the Insureds' health insurance policies stand, and the Insureds' claims must be dismissed. Because we find that this is indeed the case, this issue is dispositive.

New Jersey Statute, section 2A:15–97, essentially reverses the common law collateral source doctrine by requiring a plaintiff who receives benefits from *any* source other than a joint tortfeasor to deduct that amount from his or her recovery in *any* civil action.[9] Thus, payments made by health care providers are deducted from a plaintiff's tort recovery under New Jersey law.[10]

Generally, a state law that "relates to" an ERISA-governed plan is preempted by ERISA. 29 U.S.C. § 1144(a). ERISA's expansive express preemption rule—as distinguished from the jurisdictional question of complete preemption discussed above—is set forth in Section 514(a) of the Act, and provides that ERISA's regulatory structure "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan [subject to ERISA]." 29 U.S.C. § 1144(a) (emphasis added). The District Court has determined that the state law on which the Insureds rely "relates to" the Insureds' ERISA plans. That ruling is not before us for review. The Insureds' claims are thus preempted unless they fall within an exception to Section 514(a).

The relevant exception here is Section 514(b)(2)(A), or the "savings clause." The savings clause provides that, apart from particular scenarios not presented here,[11] "nothing in [ERISA's preemption provisions] shall be construed to exempt or relieve any person from *any law of any state which regulates insurance*, banking or securities." 29 U.S.C. § 1144(b)(2)(A) (emphasis added). Accordingly, the key question before us is whether the New Jersey law underlying the Insureds' claims is a law "which regulates insurance."

■ The Supreme Court recently clarified the appropriate test for determining whether a state law that relates to employee benefit plans falls within the savings clause. In a 2003 decision, issued after the District Court had made its preemption ruling in this case, the Court directed that for a "state law to be deemed a 'law . . . which regulates insurance' under

---

**9.** The New Jersey Statute, N.J. Stat. Ann. § 2A: 15–97, reads:

In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c.70 (C.39:6A–1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff, or any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the ben-

efits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

**10.** The Insureds failed to plead in their complaint whether such amounts were withheld from their settlements. Because all of the Insureds settled their tort actions, we assume that such deductions would have been made if they had proceeded to trial.

**11.** These excluded scenarios are set forth in the "deemer" clause, and exempt certain self-funded ERISA plans from the reach of state laws otherwise saved from preemption under the savings clause. The deemer clause is not at issue here. *See* 29 U.S.C. § 1154(b)(2)(B).

§ 1144(b)(2)(A), it must satisfy two requirements." *Miller,* 538 U.S. at 341–42, 123 S.Ct. 1471. First, the state law must be "specifically directed toward entities engaged in insurance." *Id.* Second, the state law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Id.*[12]

The Providers argue that the New Jersey statute applies to *"any* civil action" and funds from *"any* other source," and thus, it is not specifically directed toward insurance. In *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court addressed a similar case where a state law had its primary effect on insurers but was not limited to insurers. At issue in *Pilot* was Mississippi's law of bad faith. Even though the Mississippi Supreme Court had identified its law of bad faith with the insurance industry, the Supreme Court found that the law was based in general tort and contract law, not insurance law. *Id.* at 49–50, 107 S.Ct. 1549. The law could apply in any breach of contract case, not merely a breach of an insurance contract. *Id.* As a result, the law did not fall within the savings clause. *Id.*

■ Here, the District Court found, and the Insureds argue, that the New Jersey statute is distinguishable from *Pilot* because it was specifically intended to benefit the liability insurance industry. Terming the statute an "anti-subrogation law," the Insureds contend that the statute is the result of a conscious tort reform effort by the legislature that shows a choice to shift the burden for tort recovery from liability insurers to health insurers. Although the legislative history and the *Perreira* decision do indicate an intent to lighten the burden on the liability insurance industry,

we cannot say that the New Jersey statute is "specifically directed toward the insurance industry" for the purpose of the savings clause.

Before turning to the effect the statute has on New Jersey insurance law, an examination of the statute itself indicates that it is more than just an insurance regulation. New Jersey did not define section 2A:15–97 as an "antisubrogation law," nor did New Jersey place this statute among the statutes regulating insurance. Rather, the statute is entitled, "Personal injury or wrongful death actions; benefits from sources other than joint tortfeasor; disclosure; deduction from plaintiff's award," and is included in the portion of New Jersey's statutes dealing with civil actions. The plain language of the statute reveals that this statute is not limited to regulating either health insurance or liability insurance providers.

Additionally, examination of the driving intent behind the statute shows that this case parallels the analysis in *Pilot.* As in *Pilot,* a state supreme court described the law as one intended to affect the insurance industry. *Perreira,* 778 A.2d at 436. Despite this finding, the law here is a general law of civil procedure. The New Jersey statute governs all civil actions, not merely those involving insurance entities. Furthermore, even the *Perreira* Court recognized that the primary purpose of the law was to disallow double recovery by tort plaintiffs, not to regulate insurance contracts. *Id.*

The statute's general applicability is further exemplified by its plain language. The statute applies in *"any* civil action" to benefits received from *"any* other source." As in *Pilot,* the New Jersey law regulates

---

**12.** This second factor, of course, marks a departure from the Court's earlier jurisprudence concerning the three McCarran–Ferguson factors, on which the District Court's decision was based.

non-insurance parties as well as insurance entities. For example, a plaintiff would be required to report any contribution, such as a private indemnity agreement, under the statute. Consequently, in some circumstances the statute will have no effect on health insurers at all. Furthermore, the Insureds heavily rely on the New Jersey legislature's intent to reduce the expense of liability insurance as evidence of the statute's specific intent to regulate the insurance industry. The statute, however, applies in all civil actions, not merely those in which liability insurers will pay the judgment. Thus, in some cases the statute will benefit private tortfeasors, and not insurance entities. Accordingly, as the Court found in *Pilot,* the New Jersey statute is merely one that will usually, although not exclusively, be applied to regulate insurance entities. *See Pilot,* 481 U.S. at 49–50, 107 S.Ct. 1549. This is not sufficient to avoid preemption under ERISA.

The Insureds argue that because the statute is "aimed at" insurance entities, the requirements under the savings clause are satisfied, even if in some cases the statute regulates non-insurance entities. They direct us to several cases where the fact that a statute is "aimed at" the insurance industry or intended to affect that industry supports the conclusion that it is specifically directed toward the industry. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("[I]t does not merely have an impact on the insurance industry; it is aimed at it."). Examination of these cases, however, reveals a key difference from the case here: they explicitly regulated insurance. *Miller,* 538 U.S. at 331–32, 123 S.Ct. 1471 ("a health insurer shall not discriminate against . . ."); *Moran,* 536 U.S. at 359, 122 S.Ct. 2151 (involving a section of Illinois's HMO Act where Congress specifically determined that HMOs were insurance entities); *Holliday,* 498 U.S. at 55, n. 2, 111

S.Ct. 403 (defining "coordination of benefits" as "a policy of insurance"); *Medical Mutual of Ohio v. deSoto,* 245 F.3d 561, 569 (6th Cir.2001) (examining California's antisubrogation statute that was limited to cases against a health care provider and contributions paid as the result of "health, sickness or income-disability insurance, accident insurance"). Although New Jersey's statute may have been "aimed at" shifting the burden of tort expenses from the liability insurance industry to the health insurance industry, the statute explicitly regulates both insurance and non-insurance entities. As in *Pilot,* we are faced with a state statute that, although commonly identified with the insurance industry, is not "specifically directed toward the insurance industry."

To avoid ERISA preemption a state law must be "specifically directed" toward the insurance industry. The New Jersey statute is not. Because the New Jersey statute could be applied to any contributor in any civil action, it is merely a statute that has a significant impact on the insurance industry. As in *Pilot,* this is not sufficient. ERISA preempts the application of New Jersey's statute; therefore, the District Court erred in denying the Providers' motion to dismiss.

## V.

Because we conclude that ERISA preempts application of New Jersey's statute, we need not address the retroactivity of the New Jersey Supreme Court's decision in *Perreira v. Rediger,* 169 N.J. 399, 778 A.2d 429 (2001). We hold that the Insureds' claims are for benefits due, and thus were properly removed to federal court. We also hold, however, that ERISA preempts application of New Jersey's statute, and thus the District Court erred in denying the Providers' motion to

dismiss. We reverse and remand with instructions for the District Court to dismiss the cause.

GARTH, Circuit Judge, dissenting.

This appeal, consisting of three consolidated actions, principally concerns two separate preemption issues: express preemption under § 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) ("ERISA"), and complete preemption under § 502(a) of ERISA, 29 U.S.C. § 1132. While I join Part III of the majority opinion because I agree that § 502(a) complete preemption exists, thereby establishing federal subject-matter jurisdiction,[13] I must respectfully dissent from Parts IV and V of the majority opinion because, in my view, the New Jersey collateral source statute, N.J.S.A. 2A:15–97,[14] is saved from express

preemption under § 514(a) of ERISA as a state regulation of insurance.

## I.

Three provisions of ERISA § 514 speak directly to the question of express preemption,[15] the mechanics of which have been neatly summarized by the Supreme Court:

> If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

---

**13.** *See generally Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir.2003); *Singh v. Prudential Health Care Plan, Inc.,* 335 F.3d 278 (4th Cir.2003).

**14.** The statute provides:

In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A–1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

N.J.S.A. 2A:15–97.

**15.** Of the three provisions of § 514, which are set forth below, the first and third are not

involved in this appeal. It is the second provision, § 514(b)(2)(A), which concerns the regulation of insurance, that this appeal focuses upon.

"Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." § 514(a), as set forth in 29 U.S.C. § 1144(a) (pre-emption clause).

"Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 514(b)(2)(A), as set forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause).

"Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

Although the express preemption analysis normally requires the application of the three relevant provisions of § 514, the sole issue in this appeal is whether the District Court erred as to the second step in the analysis in finding that N.J.S.A. 2A:15–97 is "saved" from preemption as a state statute that regulates insurance under § 514(b)(2)(A).[16] Accordingly, I confine my discussion to that narrow issue.

## II.

In *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), the Supreme Court rejected the previous use of the McCarran–Ferguson factors, and instead enunciated two requirements for a state law to be deemed a "law … which regulates insurance" under § 514(b)(2)(A). First, the state law must "be specifically directed toward entities engaged in insurance." *Id.* at 342, 123 S.Ct. 1471 (*citing Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549; *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002)). Second, the state law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Id.*

Here, there is no serious dispute that state antisubrogation laws spread policyholder risk and therefore satisfy the second *Miller* requirement.[17] *See Singh*, 335 F.3d at 286 (noting that "it is difficult to imagine an antisubrogation law … as anything other than an insurance regulation, as it addresses who pays in a given set of circumstances and is therefore directed at spreading policyholder risk"); *Med. Mut.*

*of Ohio v. deSoto*, 245 F.3d 561, 574 (6th Cir.2001) ("The logical effect of [antisubrogation laws] … is to decrease the premiums of health care providers' insurance and increase the premiums of health insurance—i.e., spread risks."). What concerns us in this appeal, then, is whether the New Jersey collateral source statute satisfies the first *Miller* requirement, *i.e.*, that it is specifically directed towards the insurance industry.

Focusing solely upon the statutory language, the majority concludes that the New Jersey collateral source statute is not specifically directed to the insurance industry because its definitions sweep too broadly and thereby encompass organizations or entities that do not provide insurance. To be sure, the collateral source statute does not specifically refer to health insurance or to subrogation and reimbursement clauses. It is contained in Title 2A of the New Jersey Statutes, which regulates the administration of civil and criminal justice. Moreover, the statute applies to plaintiffs "in any civil action" who receive benefits for their injuries from "any other source other than a joint tortfeasor." N.J.S.A. 2A:15–97. As the majority opinion notes, the term "benefits received" thus encompasses more than just insurance proceeds.

On the surface, therefore, this case would appear to present a paradigmatic example of a law of general application that has some bearing on insurers. Such laws do not qualify under the "saving" clause jurisprudence. *See Miller*, 538 U.S. at 334, 123 S.Ct. 1471. However, the inquiry does not end here, for the New Jersey Supreme Court has spoken in a rather definitive way as to the legislative

---

**16.** The two other clauses of § 514–the "preemption clause" and the "deemer clause" are not the subject of the certified questions in this appeal. *See supra* note 3.

**17.** Indeed, United and Horizon do not attempt such an argument.

purpose of the collateral source statute. *See Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001).

While recognizing that "[o]n its face, N.J.S.A. 2A:15–97 ... is silent regarding any right to subrogation or reimbursement on the part of health insurers," *id.* at 409, 778 A.2d 429, the Supreme Court in *Perreira* determined that the statute had more than one purpose: "To be sure, its primary purpose was to disallow double recovery to plaintiffs, *but a secondary goal was clearly the containment of spiraling insurance costs." Id.* at 410, 778 A.2d 429 (emphasis added). In enacting N.J.S.A. 2A:15–97, the Court noted that the legislature made a "separate legislative decision" as to which "segment of the insurance industry" would be the beneficiary of the double recovery disallowance. *Id.* As the legislative history reveals, the Court noted, the choice was made to favor liability carriers.[18] *Id.* at 411, 778 A.2d 429 (citing cases agreeing that purpose of statute was to shift burden from casualty and liability insurance industry).

### III.

I am persuaded that the foregoing statutory interpretation, coming, as it does, from the State's highest tribunal, compels the conclusion that the New Jersey collateral source statute is "specifically directed" towards the insurance industry. In my view, the majority opinion accords too little weight to such statements from the New Jersey Supreme Court, focusing instead on the admittedly broad statutory language. Our difference, then, is mostly

an hermeneutical one, centering on the interpretive import of *Perreira* in ascertaining the aim of the statute.

In assigning minimal value to *Perreira*, the majority opinion states that the mere fact that the New Jersey statute has an impact on insurance, as settled in *Perreira*, is not enough to satisfy the "specifically directed" requirement of the saving clause. Even if, the majority argues, the New Jersey Supreme Court has identified N.J.S.A. 2A:15–97 with the insurance industry, that does not change the actual terms of the statute. *See Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549 (holding common law of bad faith not saved from preemption "[e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry"). According to the majority opinion, the collateral source statute thus resembles the Mississippi law at issue in *Pilot Life*. This analogy, however, misses the critical distinction between the two provisions.

Under the relevant state law in *Pilot Life*, punitive damages could be sought for "bad faith" in denying claims without any reasonably arguable basis for the refusal to pay. 481 U.S. at 50, 107 S.Ct. 1549. The Supreme Court determined that although Mississippi had "identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Id.* "Any breach of contract," the Court observed, "and not merely breach of an insurance contract, may lead to liability for punitive damages under [the Mississippi common law of bad faith]." *Id.* Accordingly, the Court con-

---

18. In reviewing the legislative history, the Court placed particular emphasis on the Passed Bill Memo prepared by Governor's counsel:

> This bill attempts to reduce the cost of liability insurance by reducing the likelihood of a 'double recovery' in a liability

award for items which were already compensated by insurance or by other 'collateral' sources other than a tortfeasor.

*Id.* at 410, 778 A.2d 429 (quoting *Passed Bill Memo to Governor Thomas H. Kean* (Dec. 7, 1987)).

cluded that the Mississippi law did not "regulat[e] insurance" within the meaning of ERISA's saving clause. *Id.*

The holding in *Pilot Life* was premised upon the finding that "the roots of [the common law of bad faith were] firmly planted in the general principles of ... tort and contract law." *Id.* at 50. *Pilot Life,* contrary to the majority's reading, did not involve a situation where "a state supreme court described the law as one intended to affect the insurance industry." Majority Op. at 165. The Mississippi Supreme Court never stated that its common law of bad faith was specifically directed towards the insurance industry; it merely applied that longstanding law to the insurance context. *Pilot Life,* 481 U.S. at 49–50, 107 S.Ct. 1549. Under these circumstances, the Supreme Court quite properly held that "a common-sense understanding of the phrase 'regulates insurance' does not support the argument that the Mississippi law of bad faith falls under the saving clause." *Id.* at 50, 107 S.Ct. 1549.

Common sense dictates otherwise here. This case involves a *statutory enactment,* which, according to the New Jersey Supreme Court, was clearly rooted in *legislative concerns about spiraling insurance costs.* The New Jersey Supreme Court was emphatic in emphasizing insurance in its opinion:

> The effectuation of no-double-recovery [by N.J.S.A. 2A:15–97] therefore required a separate legislative decision regarding which segment of the insurance industry would be the beneficiary of that disallowance. The Legislature had two choices: to benefit health insurers by allowing repayment of costs expended on a tort plaintiff, or to benefit liability carriers by reducing the tort judgment by the amount of health care benefits received. As the legislative history reveals, the choice was made to favor lia-

bility carriers. *See Kiss v. Jacob,* 138 N.J. 278, 282 [650 A.2d 336] (1994) (stating that intent of the legislature was to control spiraling automobile-insurance costs); *Fayer v. Keene Corp.,* 311 N.J.Super. 200, 208, 709 A.2d 808 (App. Div.1998) (agreeing that purpose of statute is to shift burden to health industry); *Parker v. Esposito,* 291 N.J.Super. 560, 565, 677 A.2d 1159 (1996) (stating that purpose of collateral source statute is to prevent double recovery thereby giving relief from increasing costs of liability insurance); *Lusby v. Hitchner,* 273 N.J.Super. 578, 591, 642 A.2d 1055 (App. Div.1994) (stating that legislative determination "was apparently not only to prevent plaintiffs from obtaining a double recovery but also, except where PIP payments are involved, to shift the burden, at least to some extent, from the liability and casualty insurance industry to health and disability third-party payers").

*Perreira,* 169 N.J. at 410–11, 778 A.2d 429.

While the Supreme Court has held that "laws of general application that have some bearing on insurers do not qualify," *Miller,* 538 U.S. at 334, 123 S.Ct. 1471, the New Jersey collateral source statute presents the inverse proposition-it is a law specifically directed towards the insurance industry that has some bearing on non-insurers. As such, it "homes [sic] in on the insurance industry and does 'not just have an impact on [that] industry'." *Ward,* 526 U.S. at 368, 119 S.Ct. 1380 (quoting *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549). Because the New Jersey statute had its genesis in specific legislative action, as opposed to general principles of tort or contract law, the majority opinion's reliance on *Pilot Life* is entirely misplaced.

For these reasons, I believe that this case more closely resembles *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112

L.Ed.2d 356 (1990), where the Supreme Court dealt precisely with the question of whether a state antisubrogation law [19] was saved from preemption under § 514(b)(2)(A). There, the Court held that:

> There is no dispute that the Pennsylvania [antisubrogation] law falls within ERISA's insurance saving clause . . . [The antisubrogation law] directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain. It does not merely have an impact on the insurance industry; it is aimed at it. This returns the matter of subrogation to state law. Unless the statute is excluded from the reach of the saving clause by virtue of the deemer clause, therefore, it is not pre-empted.

498 U.S. at 60–61, 111 S.Ct. 403 (citations omitted).

Likewise, the Sixth and Fourth Circuits reached the same conclusion in considering whether similar state antisubrogation laws regulated insurance. *See Singh*, 335 F.3d at 286 (holding that subrogation prohibition of the Maryland HMO Act is a state-law regulation of insurance); *deSoto*, 245 F.3d at 573 (holding that California's antisubrogation statute regulated insurance); *see also Hampton Indus., Inc. v. Sparrow*, 981 F.2d 726, 729–30 (4th Cir.1992) (noting that "limits on subrogation recoveries appear to be aimed at the insurance industry, and therefore would also appear to come within the scope of the saving clause").

Contrary to the majority, I conclude that our understanding of the New Jersey collateral source statute must be informed by the New Jersey Supreme Court's interpretation. In the interpretive light cast by the Supreme Court in *Perreira*, the New Jersey collateral source statute is, in all essential respects, similar to those statutes already held to regulate insurance by the United States Supreme Court (*FMC Corp.*) and our two sister courts of appeals (*Singh* and *de Soto* ).

Accordingly, I conclude that the New Jersey collateral source statute is saved from ERISA preemption.[20]

Because I would affirm the District Court's holding that § 514 of ERISA does not preempt N.J.S.A. 2A:15–97, I respectfully dissent from Part IV of the majority opinion, and from Part V of the majority

---

**19.** The relevant statute—Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law—"prohibits insurance providers from obtaining reimbursement payments from recoveries an insured receives from third parties in a motor vehicle accident." *Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 213 n. 4 (3d Cir.2001).

**20.** Because I would hold that the New Jersey collateral source statute is saved from ERISA preemption, I would be obliged to reach the third certified question for interlocutory appeal. That question concerns whether *Perreira*, which held that the statutory collateral source rule prohibits health insurers from filing reimbursement or subrogation liens against individual settlements or recoveries from third-party tortfeasors, applies *retroac-*

*tively* to the health insurance plans at issue in this appeal.

This is a difficult issue, and more than that, the resolution of it could be outcome determinative in this appeal. As a result, I believe that the proper course for this Court to take would be to certify the issue of retroactivity to the New Jersey Supreme Court. Under New Jersey Court Rule 2:12A–1., the New Jersey Supreme Court may answer such a question if "there is no controlling appellate decision, constitutional provision or statute in this State." N.J. Ct. R. 2:12A–1. The use of certification "rests in the sound discretion of the federal courts." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). Such discretion, in my judgment, would be warranted here.

opinion, which directs the District Court to dismiss the Insureds' claims.