

Villanova University School of Law
Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2005

# Wirth v. Aetna US Healthcare

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2198

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wirth v. Aetna US Healthcare" (2005). *2005 Decisions.* Paper 1038.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1038

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2198

_____

JONATHAN WIRTH,
Individually and on behalf of all
others similarly situated,
Appellant

v.

AETNA U.S. HEALTHCARE

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-05406)
District Judge:  Honorable Harvey Bartle, III

_____

Argued January 24, 2005
Before:  SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

(Filed  June 9, 2005)

_____

Ronald J. Smolow     [ARGUED]
Smolow & Landis
204 Two Neshaminy Interplex
Trevose, PA  19053
    Counsel for Appellant

Raymond J. Quaglia     [ARGUED]
Ballard, Spahr, Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, PA  19103
    Counsel for Appellee

Philip A. Ryan
Christina J. Westall
German, Gallagher & Murtagh
200 South Broad Street, 5th Floor
Philadelphia, PA  19102
   *Counsel for Amicus Appellant*
   *PA Defenders Inst.*

Scott B. Cooper    [ARGUED]
Schmidt, Ronca & Kramer
209 State Street
Harrisburg, PA  17101
   *Counsel for Amicus Appellant*
   *PA Trial Lawyers*

---

### INTERIM OPINION OF THE COURT*

---

RENDELL, <u>Circuit Judge</u>.

On appeal, plaintiff Jonathan Wirth urges that his lawsuit against Aetna U.S.

Healthcare is outside the purview of the Employee Retirement and Income Security Act

of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., and, accordingly, the District Court was

---

*This opinion is an interim opinion, not a final opinion, of the Court on the appeal before us.  In this interim opinion we are opining only as to the issue of our jurisdiction and are referring the issue regarding the proper application of Pennsylvania state law to the Supreme Court of Pennsylvania by way of the certification procedure outlined in 210 Pa. Code § 63.10 (2005) .  Once the Supreme Court of Pennsylvania has acted on the Petition, which we will be filing for certification, and depending upon their grant or denial of such certification, we will issue a second opinion either adopting the Pennsylvania court's determination (if certification is granted), or determining the issue on our own (if certification is denied).

2

without jurisdiction to adjudicate his claims. Wirth also contends that, even if his state law claims were properly removed to federal court by virtue of ERISA, the District Court erred in dismissing those claims. We have jurisdiction to review his challenge under 28 U.S.C. § 1291.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we write solely for the parties, we recite only those facts necessary to our determination. Wirth was injured in a motor vehicle accident caused by a third party tortfeasor. He was treated for those injuries, and his medical care was covered under an HMO healthcare agreement issued by Aetna.[1] Wirth recovered a settlement from the third party tortfeasor; subsequently, Aetna, who claimed it was acting within its contractual rights, asserted a subrogation lien to recover monies from that settlement.[2] Wirth paid Aetna $2,066.90 to release its lien and then filed a class action suit in state court alleging, *inter alia*, unjust enrichment and violation of section 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), which

---

[1]These benefits were part of an employee benefit plan sponsored by Wirth's father's employer known as a Quality Point of Service Program ("QPOS") and in excess of those already paid by Wirth's household auto insurance policy.

[2]The Certificate of Coverage applicable to Wirth's QPOS program contained a provision stating, in part, that where Aetna provides healthcare benefits for injuries "for which a third party is or may be responsible, then [it] retains the right to repayment of the full cost of all benefits provided . . . that are associated with the injury." (Cert. of Cov. at R66.) The provision adds that its right of recovery applies to payments made by third party tortfeasors. (*Id.*)

     Aetna's summary plan description for the QPOS program, however, makes no reference to rights of reimbursement or subrogation.

provides, "In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits paid or payable by a program, group contract or other arrangement."  75 Pa.C.S. § 1720.

Aetna removed the suit to federal court contending that Wirth's claims were simply to "recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), and therefore fell within the scope of, and were completely preempted by, section 502(a)(1)(B) of ERISA.[3]  The District Court agreed and denied Wirth's motion to remand.[4]

After concluding it had subject matter jurisdiction over the action, the District Court proceeded to consider the specific allegations of Wirth's complaint.  There, Wirth averred that, by laying claim to any portion of Wirth's tort recovery, Aetna had violated the anti-subrogation provision found at section 1720 of the MVFRL.  Aetna countered, contending that section 1720 was inapplicable to an HMO like itself because Pennsylvania's Health Maintenance Organization Act ("HMO Act") provides that HMOs

---

[3]Certain federal laws, ERISA being one, so thoroughly occupy a field of regulatory interest that any claim brought within that field, however stated in the complaint – a recognized exception to the well-pleaded complaint rule – constitutes a federal claim.  In such cases, the doctrine of complete preemption provides federal jurisdiction and allows removal to federal court.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).

[4]In so holding, the District Court also rejected Wirth's contention that application of the savings clause of ERISA section 514(b)(2)(a), which "saves" state laws that regulate insurance from preemption and allows application of such state insurance laws in federal court, might function to defeat jurisdiction.

4

will not be governed by a state law that regulates insurance "unless such law specifically and in exact terms applies to such health maintenance organization." 40 Pa.C.S. § 1560 (a). Aetna urged that section 1720, which does not explicitly employ the term "health maintenance organization," is not specifically applicable, so subrogation is permissible. The District Court agreed and, finding that "there is nothing in § 1720 which specifically and in exact terms applies to HMOs," dismissed Wirth's claims. (4/5/04 Opinion at 4.)

On appeal, Wirth challenges both the District Court's conclusion that his claims are completely preempted by section 502(a) of ERISA – the basis for the District Court's jurisdiction over the action – as well as the Court's statutory analysis of sections 1720 of the MVFRL and 1560(a) of the HMO Act.

### SUBJECT MATTER JURISDICTION CLAIM: PREEMPTION UNDER SECTION 502(A)

Wirth first argues that the removal of his lawsuit to federal court, and the reclassification of his state law claims as an ERISA action, was error. Accordingly, we must evaluate whether the District Court had jurisdiction. We exercise plenary review over challenges to subject matter jurisdiction. *Pryzbowski v. U.S. Healthcare Inc.*, 245 F.3d 266, 268 (3d Cir. 2001).

Section 502(a) allows a participant in an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Wirth asserts that his claims are not for benefits due, or to

5

enforce his rights, under the Aetna plan, 29 U.S.C. § 1132(a)(1)(B), and that, therefore, ERISA does not provide a civil enforcement mechanism for Wirth to challenge or defend against Aetna's liens, and the District Court had no jurisdiction over the matter. Only recently, we confronted a nearly identical jurisdictional challenge, and, as memorialized in Judge Nygaard's thoughtful opinion, *see Levine v. United Healthcare Corp.*, Nos. 04-1224 and 04-1225, 2005 U.S. App. LEXIS 4318, at *16 (3d Cir. Mar. 16, 2005), concluded that claims like those made by Wirth, challenging an insurer's claimed right of subrogation from an insured's third party tort recovery, were within the scope of ERISA's civil enforcement scheme and were thus completely preempted under section 502(a)(1)(B). We find *Levine* to be controlling.

Like Wirth, the plaintiffs in *Levine* were injured in auto accidents, and their medical benefits were paid by their respective insurers. The plaintiffs then sued the third party tortfeasors responsible for their injuries and successfully recovered money. *Id.* at *3-4. Pursuant to then-valid subrogation and reimbursement provisions of the relevant healthcare plans, the insurers sought reimbursement for the benefits paid from the insured plaintiffs, who each settled with their respective insurer by paying over a portion of their tort recovery.[5] *Id.* at *4. Notwithstanding the settlements, the plaintiffs proceeded to sue

---

[5]Following the settlements, the New Jersey Supreme Court decided *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), in which it held that a New Jersey Department of Insurance regulation allowing insurers to subrogate in the event of a third party tort recovery conflicted with N.J. Stat. Ann. § 2A:15-97, a statute regulating deductions from plaintiff's awards in personal injury and wrongful death actions.

their insurers for, *inter alia*, unjust enrichment in New Jersey state court.

As did Aetna here, the insurers in *Levine* removed the plaintiffs' action to federal court. The district court considering *Levine* denied the plaintiffs' motion to remand, finding that, though the issue was hardly clear, the insureds essentially "sought to recoup a benefit due under the plan" bringing their claims within the scope of ERISA. *Id.* at *6 (citation omitted). After issuing an opinion on the merits of the plaintiffs' claims and granting the insurer's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), the district court certified three issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), one of which queried: "whether plaintiffs' unjust enrichment claims for monies taken pursuant to subrogation and reimbursement provisions in their ERISA health plans are claims for 'benefits due' within the meaning of ERISA section 502(a)." *Levine*, 2005 U.S. App. LEXIS 4318, at *9.

On appeal in *Levine*, we considered this question and answered in the affirmative. We noted that both the Fourth and Fifth Circuits had determined that similar cases were subject to preemption under ERISA, *see Singh v. Prudential Health Care Plan Inc.*, 335 F.3d 278 (4th Cir. 2003), and *Arana v. Ochsner*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc), and that reaching a similar conclusion in this Court was consistent with the

---

Therefore, the regulation was declared invalid and, as a result, subrogation and reimbursement provisions are no longer permitted in New Jersey health insurance policies. Although there is no New Jersey statutory counterpart to section 1720 of Pennsylvania's MVFRL, *Perreira* effects the same result in that state.

7

framework we previously had laid out for evaluating complete preemption in *Pryzbowski*,
245 F.3d at 271 (designating two categories of ERISA cases: 1) where the claim
challenges the administration of, or eligibility for, benefits, which are preempted, and 2)
those challenging the quality of medical treatment, which are not preempted). *Levine*,
2005 U.S. App. LEXIS 4318, at *12-13 (citing *Pegram v. Herdrich*, 530 U.S. 211, 147 L.
Ed. 2d 164, 120 S. Ct. 2143 (2000)). Recognizing that the facts of *Levine* neither
overlapped perfectly with those in *Arana* or *Singh*, nor fell squarely within either
*Pryzbowski* category, we nonetheless were persuaded by the collective reasoning of these
cases:

> Here, the Insureds claim that they were entitled to certain health benefits and
> that the Providers wrongly sought the return of those benefits. . . . The
> Insureds have already paid back a portion of their benefits. Thus, they claim
> essentially that they are entitled to have certain health insurance claims paid
> under their ERISA plans. It is impossible to determine the merits of the
> Insureds' claims without delving into the provisions of their ERISA-governed
> plans.
>
> We agree with the reasoning of the Courts of Appeal for the Fourth and Fifth
> Circuits. Where, as here, plaintiffs claim that their ERISA plan wrongfully
> sought reimbursement of previously paid health benefits, the claim is for
> "benefits due" and federal jurisdiction under section 502(a) of ERISA is
> appropriate. Such a rule comports with our earlier jurisprudence because,
> although not directly analogous, such claims are more like challenges to the
> "administration of benefits" than challenges to the "quality of benefits
> received." *See Pryzbowski*, 245 F.3d at 273.

*Levine*, 2005 U.S. App. LEXIS 4318, at *15-16.

Wirth maintains that seeking recovery of the $2,066.90 paid to extinguish Aetna's
lien is not tantamount to seeking recovery of "benefits due" to him. Indeed, he argues, his

8

medical benefits were, without incident, provided to him following the accident, and

Aetna never sought to recover the benefits themselves, only certain "costs" associated

with them. This contention is without merit and, in any event, was rejected in *Levine*. In

that case, as well as here, the actions undertaken by the insurers resulted in diminished

benefits provided to the plaintiff insureds. That the bills and coins used to extinguish

Aetna's lien are not literally the same as those used to satisfy its obligation to cover

Wirth's injuries is of no import – "the benefits are under something of a cloud." *Arana*,

338 F.3d at 438. Wirth "has not fully 'recovered' them because he has not obtained the

benefits free and clear of [Aetna's] claims." *Id.* As was the case with the insured

plaintiffs in *Levine*, Wirth's claims against Aetna are completely preempted by ERISA

and the District Court correctly concluded it had subject matter jurisdiction over this

matter.

### STATUTORY INTERPRETATION CLAIM

Wirth also argues that the District Court erred in concluding that Aetna was

exempt, by virtue of Pennsylvania's HMO Act, 40 Pa.C.S. § 1560 (a), from complying

with the anti-subrogation provision found in section 1720 of the MVFRL.[6]

As noted above, section 1720 proscribes "subrogation or reimbursement from a

---

[6]This issue is not informed by our opinion in *Levine*; in that case, the relevant statutory interpretation issue concerned whether New Jersey's anti-subrogation provision regulates insurance such that it was "saved" under ERISA section 514(b)(2)(a). The Supreme Court has already resolved this issue with respect to Pennsylvania's statute. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).

claimant's tort recovery with respect to . . . benefits paid or payable by a *program, group contract or other arrangement*." 75 Pa.C.S. § 1720 (emphasis added). Read alone, section 1720 sets forth a policy that would clearly bar Aetna's claim; and this result, Wirth asserts, is consonant with the underlying purposes of the MVFRL – cost savings and the provision of full medical benefits to Pennsylvania's injured insureds. The Supreme Court has specifically held that this provision of Pennsylvania state law does regulate insurance. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). However, section 1560(a) of the HMO Act, which exempts HMOs from a state law that regulates insurance "unless such law specifically and in exact terms applies to such health maintenance organization," raises serious questions concerning the applicability of section 1720 to Aetna, an HMO. Does the phrase "program, group contract or other arrangement" constitute a sufficiently specific and "exact" reference to an HMO?

Wirth contends the District Court's determination that the HMO Act exempts Aetna from section 1720's application runs counter to the plain language of the MVFRL and basic precepts of statutory construction, as well as clear legislative intent. First, Wirth argues that section 1720's prohibition on subrogation of benefits paid by "a program, group contract or other arrangement" applies to the Aetna agreement at issue because, not only do the terms "program" and "group contract" clearly comprise HMOs, but they are the very terms employed by Aetna itself to describe Wirth's healthcare plan (the "Program" or "Group Agreement"). The HMO Act does not require actual use of the

10

words "health maintenance organization," Wirth urges, and therefore the statute does not exempt Aetna from Pennsylvania's anti-subrogation provision. *Cf. Federal Aviation Admin. v. Robertson*, 422 U.S. 255, 265 (1975) (statutory provision excluding from disclosure only those materials "specifically exempted" by statute "cannot be read as meaning that the exemption only applies to documents specified, i.e., by naming them precisely"). Aetna disputes this contention, and claims that section 1720's failure to include the term "HMO" in the statute proves the law does not "specifically and in exact terms" apply to health maintenance organizations. Wirth contends that the language of section 1720 concerning programs and group contracts clearly "applies" to Aetna whether or not the term HMO is included in the provision's language.

In addition, Wirth asserts that prohibiting subrogation by Aetna is consistent with both the MVFRL and the HMO Act, whereas allowing subrogation undermines the statutes' respective purposes. Wirth points to section 1722 of the MVFRL in support of this contention. There, the legislature provided that:

> In any action for damages against a tortfeasor . . . arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under . . . any program, group contract or other arrangement for payment of benefits . . . shall be precluded from recovering the amount of benefits paid or payable under . . . any program, group contract or other arrangement for payment of benefits.

75 Pa.C.S. § 1722. When used in connection with § 1720, this prevents double recovery. But, if section 1720 does not apply, it prevents someone like Wirth from getting *any*

11

recovery. For, should Aetna's position prevail, and section 1560(a) exempt it from section 1720's prohibition on subrogation, an insured like Wirth could be left completely without medical benefits – he could be forced to reimburse his HMO following a tort recovery, but that tort recovery, by law, would not have included recovery of medical benefits.

Aetna does not offer a real response to this dilemma but insists that the statutory text of section 1720 is clear, especially given the fact that section 1719 of the MVFRL is incorporated by reference in section 1720. 75 Pa.C.S. § 1719. Aetna argues that the General Assembly, recognizing that section 1720's prohibitions would not cover all healthcare arrangements, stated in section 1719: "As used in this section the term 'PROGRAM, GROUP CONTRACT OR OTHER ARRANGEMENT' includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations)." The legislature's failure to specifically reference HMOs in section 1719, wherein they did explicitly name "hospital plan corporation[s] or a professional health service corporation[s]," is significant, Aetna urges. Aetna also argues that elsewhere, when defining statutory coverage, the Pennsylvania legislature has included HMOs, along with hospital plan corporations and professional health service corporations. *See*, *e.g.*, 40 P.S. § 764c (defining those to whom statute mandating coverage for mammograms applies). Moreover, Aetna argues,

12

the fact that section 1719 evidences that the term "program, group contract, or other arrangement" does not apply to HMOs means that, in turn, an insured such as Wirth is not barred under section 1722 from recovering medical benefits from a tortfeasor.

Unfortunately, the HMO Act is silent on the topic of subrogation. Wirth asserts that section 1720 of the MVFRL, the statute most recently passed, controls. 1 Pa.C.S. § 1936 (2004) ("Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail."). Wirth asserts that the Pennsylvania legislature, in passing the MVFRL, enacted a uniform system of law covering a whole class of subjects. It should be construed to have repealed the HMO Act, a pre-existing statute relevant to the same class of subjects. Aetna, on the other hand, contends that because § 1720 was passed after the HMO Act, the legislature's failure to specifically name HMOs in 1720, knowing of the requirement set forth in § 1560(a) of the Act, is significant.

The seemingly incongruous Pennsylvania statutory provisions before us implicate an issue of substantial public importance heretofore unresolved. The Supreme Court of Pennsylvania accepts questions of state law upon certification from a United States Court of Appeals pursuant to 210 Pa. Code § 63.10 (2005). As explained therein, the Court has discretion to "accept certification of a question of Pennsylvania law only where there are special and important reasons therefor, including, but not limited to, any of the following":

13

1. The question of law is one of first impression and is of such substantial public importance as to require prompt and definitive resolution by this Court;

2. The question of law is one with respect to which there are conflicting decisions in other courts; or

3. The question of law concerns an unsettled issue of the constitutionality, construction, or application of a statute of this Commonwealth.

4. This Court shall not accept certification unless all facts material to the question of law to be determined are undisputed, and the question of law is one that the petitioning court has not previously decided.

*Id.* Because, in our view, prongs one, three, and four are satisfied here, and our review of Pennsylvania law leaves us uncertain as to how the Supreme Court would resolve this statutory issue of first impression, we will petition the Court to accept certification of the following question:

1.      Is an HMO exempt, by virtue of Pennsylvania's HMO Act, 40 Pa.C.S. § 1560 (a), from complying with the anti-subrogation provision found in section 1720 of the MVFRL?

### CONCLUSION

Wirth's claims against Aetna are best characterized as claims for "benefits due," and federal jurisdiction under section 502(a) of ERISA is appropriate. As to Wirth's contention that the District Court erred in concluding that section 1560(c) of the HMO Act exempted Aetna from the anti-subrogation provision found at section 1720 of the

14

MVFRL, we will petition the Supreme Court of Pennsylvania to accept certification of the question of law set forth above, which concerns an unsettled issue of statutory construction and application. This Court shall retain jurisdiction of the appeal pending resolution of this request for certification.